ROBINSON TOWNSHIP v KNOLL

Docket No. 58747. Argued January 8, 1980 (Calendar No. 1).—Decided
February 23, 1981.

Robinson Township, Ottawa County, brought an action against
Donald Knoll and Merle Knoll to require them to remove a

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning §§ 7, 11.
Exclusionary zoning. 48 ALR3d 1210.

[2] 16A Am Jur 2d, Constitutional Law §§ 363, 364.

[3, 13] 82 Am Jur 2d, Zoning and Planning § 11 et seq.

[4] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps
§§ 13, 14.
82 Am Jur 2d, Zoning and Planning §§ 8, 11 et seq.
Exclusionary zoning. 48 ALR3d 1210.

[5-7, 9,10] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist
Camps §§ 13, 14.
82 Am Jur 2d, Zoning and Planning § 15.
Exclusionary zoning. 48 ALR3d 1210.

[8] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps
§ 14.
Aesthetic objectives or considerations as affecting validity of zoning
ordinance. 21 ALR3d 1222.

[11] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps
§§ 13, 14.
82 Am Jur 2d, Zoning and Planning § 88 et seq.
Exclusionary zoning. 48 ALR3d 1210.

[12] 5 Am Jur 2d, Appeal and Error §§ 873, 874.

[14, 22] 82 Am Jur 2d, Zoning and Planning § 27.
Exclusionary zoning. 48 ALR3d 1210.

[15, 25, 26] 82 Am Jur 2d, Zoning and Planning §§ 37, 39 et seq.

[16, 17] 82 Am Jur 2d, Zoning and Planning §§ 39, 88 et seq.
Exclusionary zoning. 48 ALR3d 1210.

[18] 82 Am Jur 2d, Zoning and Planning §§ 37, 39 et seq.

[19] 82 Am Jur 2d, Zoning and Planning § 38 et seq.
Exclusionary zoning. 48 ALR3d 1210.

[20] 82 Am Jur 2d, Zoning and Planning §§ 266, 305 et seq.

[21] 82 Am Jur 2d, Zoning and Planning § 15.
Exclusionary zoning. 48 ALR3d 1210.

[23] 82 Am Jur 2d, Zoning and Planning § 25 et seq.

[24] 82 Am Jur 2d, Zoning and Planning § 29.

mobile home from 80 acres of land they were buying on a land contract. The plaintiff alleged that the defendants' mobile home violates the township's zoning ordinance, which provides that mobile homes may be located only in licensed mobile-home parks and requires that a building permit be obtained before erecting a building in the township, and that the mobile home is a nuisance per se. The defendants' land is zoned for use as a mobile-home park but a license and building permit were not obtained, and at the time the action was begun there were no mobile-home parks in Robinson Township. The defendants challenged the constitutionality of the zoning ordinance on the grounds that it arbitrarily and capriciously prohibits a proper use of the land and that it fails to establish clear standards for property owners. The Ottawa Circuit Court, James E. Townsend, J., granted judgment for the plaintiff and ordered the defendants to remove the mobile home from their land within 30 days. The Court of Appeals, J. H. Gillis, P.J., and N. J. Kaufman and Quinnell, JJ., reversed on the grounds that a single mobile home is not a nuisance per se and that the township had unconstitutionally excluded the legitimate use of land for single mobile homes (Docket No. 25455). The plaintiff appeals. In an opinion by Justice Levin, joined by Justices Kavanagh, Williams, and Fitzgerald, the Supreme Court *held:*

The per se exclusion of mobile homes from all areas not designated as mobile-home parks has no reasonable basis under the police power, and is therefore unconstitutional. The reasoning on which the rule of *Wyoming Twp v Herweyer,* 321 Mich 611; 33 NW2d 93 (1948), was based is no longer valid and that decision and others to the same effect are overruled as to housing that is not a "trailer".

1. A plaintiff is denied substantive due process by the enactment of a zoning ordinance which has no reasonable basis for its existence. The reasonable basis must be grounded in the police power of the state, which includes the protection of the safety, health, morals, prosperity, comfort, convenience, and welfare of the public, or any substantial part of the public. The question raised is whether mobile homes differ from other single-family dwellings in any constitutionally cognizable manner which would justify their per se classification as a different use. While an ordinance must stand the test of reasonableness, the presumption is in favor of its validity and courts may not invalidate an ordinance unless constitutional objections are supported by competent evidence or appear on its face. The defendants, having failed to produce any evidence in the circuit court in this case, can succeed only if the rule that no mobile

home may be located outside a mobile-home park is invalid on its face.

2. Over 30 years ago the Supreme Court decided that a municipality may constitutionally limit the use of trailers to trailer parks. What is being considered now is the per se exclusion not of trailers, but of mobile homes, and more than the label has changed with time. The mobile home today can compare favorably with site-built housing in size, safety, and attractiveness. Mobile homes inferior in many respects to homes built on the site continue to be manufactured, but the assumption that all mobile homes are different from all homes built on the site with respect to criteria cognizable under the police power can no longer be accepted.

3. The township's zoning ordinance defines "mobile home" as a "movable or portable" single-family dwelling. Homes built on the site are, by the township's definition, "movable or portable", although they are rarely moved; the township's building code specifically provides for moving permits to allow the relocation of one- or two-family dwellings. If mobile homes are to be excluded from all residential zones in Robinson Township other than mobile-home parks, it cannot be because they are "movable or portable". It would be arbitrary to discriminate against mobile homes on that basis.

4. The facts that a mobile home is "constructed to be towed on its own chassis" and "designed without a permanent foundation" do not identify characteristics which justify the exclusion and segregation of mobile homes. One can agree that a community has a legitimate interest in safeguarding residents against, for example, windstorm damage, justifying a requirement that a mobile home be firmly attached to a solid foundation on the site. And a municipality may reasonably conclude that a dwelling the wheels and chassis of which are exposed is unsightly or is likely to lead to transience and should not be tolerated alongside homes built on the site. Such considerations would justify requirements that certain on-site modifications be made as a condition to placement of a mobile home in an area which is not a designated mobile-home park. The ordinance defining "mobile home", however, reflects no such concerns. To say that a dwelling was "constructed to be towed on its own chassis" or "designed without a permanent foundation" speaks only to its origin and not to its present characteristics. An ordinance restricting the placement of mobile homes must be directed to the dwelling as it will exist on the land, and not to its characteristics when delivered to the site.

5. There are no other identifiable inherent characteristics of

mobile homes which justify the per se rule of the ordinance. It appears that mobile homes can be designed or modified to compare favorably in appearance to many homes built on the site. There is no longer reason to presume that mobile homes will fail to live up to a community's aesthetic standards. Concerns based in health and safety are also illusory. A municipality is free to deal with concerns of this type in a reasonable code. Standards to assure that mobile homes compare favorably to other housing in, for example, aesthetic standards, insulation, adequacy of plumbing, and size of the living space exist or can be imposed; a community may impose requirements to assure protection from windstorm damage. The practical necessities attending the installation of a single mobile home in an area in which housing built on the site is allowed, along with conditions that a township might reasonably attach to mobile-home use, vitiate the cause for concern that mobile homes are given to transient use. The investment necessary to install a mobile home as a single-family dwelling makes it unreasonable to assume that the dweller will stay only a short time.

6. The disparate treatment of mobile homes seems to be based on attitudes which no longer have a basis in fact. Community fear of blight can be traced to the low quality both of the early trailers and of their parking facilities. But substantial improvements in the quality of both mobile homes and park facilities may have undermined the bases for this antipathy today. The mobile home currently produced is an attractive, completely furnished, efficiently spacious dwelling for which national construction standards have been adopted and enforced by the manufacturers' associations. Decisions from other jurisdictions, while not directly on point, support the view that per se discrimination against mobile homes can no longer be legitimized. Moreover, Robinson Township's building code allows for prefabricated housing which is assembled at the site. There can be no reasonable basis for distinguishing between mobile homes and other prefabricated dwellings. Both are "movable or portable", and may be similar in appearance and constructed of similar materials. It is not a valid basis for distinction under the police power that one is not only prefabricated but also preassembled, and "constructed to be towed on its own chassis".

7. A municipality need not permit all mobile homes, regardless of size, appearance, quality of manufacture, or manner of installation on the site, to be placed wherever single-family homes have been built on the site or are permitted to be built. However, a per se restriction is invalid; if a particular mobile

home is excluded from areas other than mobile-home parks, it must be because it fails to satisfy standards designed to assure that the mobile home will compare favorably with other housing that would be allowed on that site, and not merely because it is a mobile home.

8. A building permit could not have been issued because of the per se rule confining mobile homes to mobile-home parks. It necessarily would have been futile for the Knolls to apply for one; therefore, the township is entitled to no relief based on the failure to apply for a building permit. Whether provisions of the building code may now be invoked against the defendants is left for consideration by the circuit court should the township seek further relief on that basis.

9. The Court reserved the question whether its decision should be applied retroactively in other pending cases or to other zoning ordinances.

The judgment of the Court of Appeals is vacated and the case is remanded to the circuit court for further proceedings.

Chief Justice Coleman, joined by Justice Ryan, dissented:

1. Leave to appeal was granted in this case to reconsider the constitutionality of an ordinance restricting the occupancy of mobile homes to mobile-home parks. The parties also raise other issues, including whether the classifications in and the application of the zoning ordinances fall unconstitutionally upon the defendants' property. The Court has reached far beyond these limited issues upon which the case might have been resolved to strike down zoning classifications for mobile homes which have been relied upon across the state and the nation. A constitutional issue need not be reached where another ground exists for resolving the case; if several constitutional issues are raised, the Court should not proceed to dispose of the case on the broadest constitutional issues, if other more specific issues could dispose of it. The Court, while stating the facts of the case, ignores them and simply generalizes that there is no reasonable governmental interest being advanced in classifying mobile homes as a use separate from other residential uses.

2. The defendants have the burden of showing that no governmental interest is being advanced by the present classification of mobile homes for zoning purposes. The ordinance does not restrict mobile-home parks to any particular residential zone, but it does require approval of the location and plan by the Township Board of Appeals. It also places with the board the power to hear and decide applications for special exceptions, special or conditional uses, and other special questions.

The defendants did not apply for a variance, special exception, permit for a mobile-home park, or building permit. The property was not shown to be subject to a nonconforming use. The trailer was not placed prior to the effective date of the zoning ordinance. There is no dispute that the home in question is a mobile home by the definition of the ordinance. Comparisons between mobile homes and modular homes or prefabricated homes are inapposite. Likewise, the argument that other homes built on the site can be moved is inapposite, because they are not built to be towed on their own chassis or to blend with traffic. The Court argues that, because some trailer homes are improved in appearance, all must be considered for placement in areas zoned for other residential uses, despite all the precedent to the contrary.

3. The presumption in favor of constitutionality can be overcome only by finding that the ordinance serves no governmental interest. Zoning restrictions are enacted pursuant to the police power to make regulations for the public's health, safety, and welfare. The Legislature provided that a zoning ordinance shall be made with reasonable consideration of, among other things, the character of each district, the conservation of property values, and the general and appropriate trend and character of land, building and population development.

4. Although the construction of some modern mobile homes has improved and the area of some has been enlarged, basic differences between mobile homes and homes built on the site remain. A mobile home is built without a permanent foundation and must be of a weight and dimensions that can be towed on a highway. They are more susceptible to damage by windstorm and fire, which increases the possibility of injury to persons and property in the surrounding area. The police power extends to imposing reasonable regulations to safeguard residents of mobile homes and other persons against the dangers of such damage. Various practical problems may result from the lack of storage space in mobile homes. Also, because mobile homes are designed to be towed, they may lead to increased transience and to unsightly and possibly dangerous conditions in the land when the trailer is removed. Even if the mobile home remains in one spot, it is generally subject to more rapid deterioration than a home built on the site. Further, it would be unreasonable to assume, or take judicial notice of, the conclusion that mobile homes compare favorably with homes built on the site.

5. One widely acknowledged reasonable governmental inter-

est is the preservation of property values. The value is dependent not only upon the intrinsic nature of the property but also upon the nature and use of neighboring property. Even the best trailer homes are significantly different from site-built homes, or are perceived by many persons to be so. That perception can have a significant effect on property values. Restricting mobile homes to designated areas also furthers governmental interests by furthering the safety, sanitary, and recreational needs of the occupants and of other persons, and by grouping like uses together. The defendants have not overcome the burden of proving that there is no legitimate difference of opinion concerning the reasonableness of the classification, and thus have not overcome the presumption of constitutionality.

6. While the township might have advanced the governmental interests by less restrictive means, it was not constitutionally required to do so if there is some reasonable basis for the classification chosen. Zoning classifications designed to group like uses together, and to separate incompatible uses, necessarily involve generalizations and rough accommodations. If the per se exclusion of certan uses from a zone is unreasonable where the municipality could have adopted less restrictive requirements which would have served the public interest adequately, then it is unlikely that most zoning classifications would survive constitutional scrutiny. The Constitution does not impose such restrictions on zoning. Rather, so long as there is a reasonable basis for the classification chosen, the landowner's remedy lies with the local zoning bodies either through seeking a variance or attempting to change the classification itself.

7. The defendants cannot prevail on their claim of de facto exclusion on the record presented. The ordinance in this case includes traditional mobile-home parks, in which the lots are rented, and mobile-home subdivisions, in which the lots are subdivided and sold. The ordinance provides for mobile-home parks and an area in the township has been approved for a mobile-home park. The mere fact that the park has not been developed is insufficient for a claim of de facto exclusion. The defendants have not introduced any evidence that the land zoned for a mobile-home park is unsuitable for that use, or that the zoning bodies have consistently denied permits to develop such a park or have acted in any arbitrary or capricious manner. They have failed to show that there is no governmental interest in a mobile-home classification as a separate use. On the record presented, they have failed to overcome the presumption of constitutionality of the ordinance.

8. The Court's opinion does not settle the question of retroac-

tivity. Because of reliance on the constitutionality of mobile-home classifications, the opinion should take effect prospectively.

Justice Moody, dissenting, would find that the ordinance survives the defendants' constitutional challenge.

1. It is questionable whether the Knolls should be permitted to raise constitutional challenges to the ordinance because they not only neglected to obtain a building permit but also failed to seek a variance. They also failed to seek relief on other, narrower, grounds. Instead, they have broadly based their claim for relief on constitutional grounds, and have thus pursued the path of greatest resistance.

2. A successful challenge to the constitutionality of a zoning ordinance requires establishing that there is no reasonable governmental interest being advanced by the present zoning classification, or that the ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question. In most instances, the burden of proof is placed upon the person attacking the validity of a zoning ordinance. Defendants have presented no facts which would indicate that the ordinance results in total or de facto exclusion of mobile homes from the township. Rather, the ordinance regulates the location of such land use within the township. In this instance, the burden of proof does not shift to the township to justify exclusion of the use, but remains with the defendants. The Knolls do not contend that the ordinance has been applied in a discriminatory manner so as to prevent the proposed use of their property, nor have they advanced any facts indicating that the ordinance as applied is unreasonable or confiscatory. The sole basis for affording relief is thus premised on the conclusion that constitutional infirmity appears on the face of the ordinance.

3. The standard of review applicable to zoning ordinances has been a limited one, at least in part because the functions of local zoning bodies are legislative in nature. Zoning ordinances are accorded a presumption of validity; the reviewing court has a duty to conceive of possible rational bases to support the ordinance. If a state of facts which would warrant the ordinance can be reasonably perceived, those facts will be presumed to exist. In the absence of evidence tending to rebut the presumption, the ordinance's validity should be upheld. Where any evidence is presented which tends to rebut the presumption of validity, the court must determine whether room for fair and legitimate differences of opinion exists concerning

whether it is reasonable to draw a classification or exclude a use. If such a debatable question exists, the court must exercise judicial restraint and uphold the ordinance. No constitutional infirmity exists on the face of the ordinance in this case because the means employed by the ordinance may have a reasonable relationship to valid legislative zoning goals relating to public health, safety, and general welfare. No evidence was presented tending to indicate that permissible legislative zoning goals would not be served by applying the ordinance and thus restricting defendants' proposed use of their land. Defendants' challenge, therefore, should be rejected.

4. Courts considering the validity of zoning ordinances regulating the location of mobile homes within a community have, nearly universally, concluded that the zoning codes tend to promote the health, safety, and welfare of the community's residents and that rational bases may exist for distinguishing between mobile homes and homes built on the site. The siting of mobile homes in a given residential district may have a tendency to depress property values of conventional dwellings. The development or growth potential of an area for residential purposes may be stunted. Some deference should be given to a community's plan for development. It may be reasoned that a sufficient number of mobile homes tend to deteriorate more quickly than conventional dwellings; some may require concentrated protection efforts by public safety departments. Mobile homes can be sited more rapidly than conventional dwellings and may thus cause a sudden and severe load on municipal facilities. There may be differences in degree in the supplying of municipal services for and regulation of mobile homes. Accordingly, there are reasonable bases grounded in the police power for the existence of the ordinance. Furthermore, the record in this case presents no evidence to counter the presumption of the ordinance's validity.

*Wyoming Twp v Herweyer,* 321 Mich 611; 33 NW2d 93 (1948) overruled.

70 Mich App 258; 245 NW2d 709 (1976) affirmed on other grounds.

## OPINION OF THE COURT

1. ZONING — ORDINANCES — DUE PROCESS — POLICE POWER.

A plaintiff is denied substantive due process by the enactment of a zoning ordinance which has no reasonable basis for its existence; the reasonable basis must be grounded in the police power of the state (US Const, Am XIV; Const 1963, art 1, § 17).

2. CONSTITUTIONAL LAW — STATES — POLICE POWER.

The police power of the state includes protection of the safety, health, morals, prosperity, comfort, convenience, and welfare of the public, or any substantial part of the public.

3. ZONING — ORDINANCES — CONSTITUTIONAL LAW.

The presumption is in favor of the constitutional validity of a zoning ordinance; while it must stand the test of reasonableness, courts may not invalidate a zoning ordinance unless constitutional objections are supported by competent evidence or appear on its face.

4. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE POWER — DUE PROCESS.

A zoning ordinance which embodies a per se rule excluding mobile homes from all residential zones that are not designated as mobile-home parks has no reasonable basis under the police power of the state and is therefore unconstitutional under the Due Process Clause; the assumption that all mobile homes are different from other single-family homes with respect to criteria cognizable under the police power of the state can no longer be accepted (US Const, Am XIV; Const 1963, art 1, § 17).

5. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE POWER — DUE PROCESS.

It would be arbitrary for a zoning ordinance to discriminate against locating mobile homes in certain residential areas on the basis that they are "movable or portable" where the township's building code specifically provides for the issuance of moving permits for the relocation of any one- or two-family dwelling (US Const, Am XIV; Const 1963, art 1, § 17).

6. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE POWER — DUE PROCESS.

The facts that a mobile home is constructed to be towed on its own chassis and designed without a permanent foundation do not identify characteristics which justify the exclusion and segregation, by a zoning ordinance, of mobile homes from all residential zones not designated as mobile-home parks because those facts speak only to the origin of the mobile home and not to its characteristics as it will be placed on the land; a municipality may reasonably conclude that certain on-site modifications should be required, under the police power of the state, as a condition to placement of a mobile home in a residential area but it may not discriminate against mobile homes on those facts (US Const, Am XIV; Const 1963, art 1, § 17).

7. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — REASONABLE-
NESS — DUE PROCESS.

The reasonableness of a zoning ordinance restricting the place-
ment of mobile homes must be tested according to the facts and
conditions of the dwelling as it will exist when placed on the
land and not according to its characteristics when delivered to
the site (US Const, Am XIV; Const 1963, art 1, § 17).

8. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE
POWER — DUE PROCESS.

There are no identifiable inherent characteristics of mobile homes
which justify a zoning ordinance excluding mobile homes from
residential areas that are not designated as mobile-home parks
where it appears that mobile homes can be designed or modi-
fied to compare favorably in appearance to many homes built
on the site, that a municipality may set reasonable standards
to assure that mobile homes compare favorably to other hous-
ing in matters affecting health and safety, and that the invest-
ment necessary to install a mobile home as a single-family
dwelling makes it unreasonable to assume that a dweller will
stay only a short time (US Const, Am XIV; Const 1963, art 1,
§ 17).

9. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE
POWER — DUE PROCESS.

The reasoning of the rule that a zoning ordinance may constitu-
tionally discriminate against mobile homes is no longer valid in
light of the improvements in the size, quality, and appearance
of mobile homes during the 30 years since the rule was an-
nounced; the mobile home today can compare favorably with
housing built on the site, and the disparate treatment of mobile
homes based on community fear of blight, because of the low
quality of early trailers and their parking facilities, no longer
has a basis in fact (US Const, Am XIV; Const 1963, art 1, § 17).

10. ZONING — MOBILE HOMES — PREFABRICATED DWELLINGS — POLICE
POWER — DUE PROCESS.

There can be no reasonable basis for a municipality's zoning
ordinance and building code which distinguish between mobile
homes, by allowing them to be installed only in designated
mobile-home parks, and other prefabricated dwellings which
are assembled at the residential site because both are "movable
or portable", and may be similar in appearance and con-
structed of similar materials; it is not a valid basis for distinc-
tion under the police power of the state that the mobile home
is not only prefabricated but also preassembled, and "con-

structed to be towed on its own chassis" (US Const, Am XIV; Const 1963, art 1, § 17).

11. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE POWER — DUE PROCESS.

A municipality need not permit all mobile homes, regardless of size, appearance, quality of manufacture, or manner of installation on the site, to be placed in all residential neighborhoods; however, a per se restriction is invalid under the Due Process Clause, and if a particular mobile home is to be excluded from residential areas which are not designated as mobile-home parks, it must be because it fails to satisfy standards designed to assure that the mobile home will compare favorably with other housing that would be allowed on that site, and not merely because it is a mobile home (US Const, Am XIV; Const 1963, art 1, § 17).

DISSENTING OPINION BY COLEMAN, C.J.

12. APPEAL — ISSUES ON APPEAL — CONSTITUTIONAL LAW.

*The Supreme Court should not reach a constitutional issue where a more limited ground for resolving the case has been raised by the parties and relied upon by the Court of Appeals; if several constitutional issues are raised, the Court should not dispose of the case on the broadest ones if the more specific issues could dispose of it.*

13. ZONING — ORDINANCES — CONSTITUTIONAL LAW.

*To challenge the constitutionality of a zoning ordinance successfully a property owner must prove that there is no reasonable governmental interest being advanced by the zoning classification or that it is a purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question.*

14. ZONING — ORDINANCES — CONSTITUTIONAL LAW — PRESUMPTIONS.

*The presumption is in favor of the constitutional validity of a zoning ordinance; it is the burden of the party attacking it to prove that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property or that enforcement of the ordinance would preclude use of the property for any purposes to which it is reasonably adapted.*

15. ZONING — ORDINANCES — POLICE POWER.

*Zoning restrictions are enacted pursuant to the police power to make regulations for the public's health, safety, and welfare;*

*the Legislature provided that a zoning ordinance shall be made with reasonable consideration of, among other things, the character of each district, the conservation of property values, and the general and appropriate trend and character of land, building and population development (MCL 125.273; MSA 5.2963[3]).*

16. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE POWER.

*Basic differences between mobile homes, which are built without a permanent foundation and of a weight and dimensions that can be towed on a highway, and houses built on the site justify a zoning ordinance excluding mobile homes from residential areas that are not designated as mobile-home parks.*

17. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE POWER.

*It would be unreasonable to assume, or to take judicial notice of, a conclusion that because the construction of some modern mobile homes has been improved and the size enlarged they compare favorably with houses built on the site and may not constitutionally be excluded, by a zoning ordinance, from residential areas not designated as mobile-home parks; the problems which may result from the general lack of storage space in mobile homes, their transience, and general tendency to more rapid deterioration than houses built on the site justify such a zoning restriction under the police power of the state.*

18. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — REASONABLENESS.

*The presumption of constitutionality of a zoning ordinance restricting the occupancy of mobile homes to approved mobile-home parks is not overcome where there can be a significant effect on property values if mobile homes are scattered throughout any residential district, and restricting mobile homes to designated areas furthers governmental interests of furthering the safety, sanitary, and recreational needs of the occupants and of other persons, and of grouping like uses together.*

19. ZONING — ORDINANCES — CONSTITUTIONAL LAW — REASONABLENESS.

*A municipality is not constitutionally required to advance governmental interests by a zoning ordinance with means less restrictive than the exclusion of certain uses from a zone if there exists some reasonable basis for the classifications chosen.*

20. Zoning — Ordinances — Constitutional Law — Reasonableness.

Zoning classifications designed to group like uses together and to separate incompatible uses necessarily involve generalizations and rough accommodations; so long as there is a reasonable basis for the classification chosen, the landowner's remedy lies with the local zoning bodies, either through seeking a variance or attempting to change the zoning classification.

21. Zoning — Mobile Homes — Constitutional Law.

Property owners cannot prevail on their argument that a township zoning ordinance operates as a de facto exclusion of mobile-home parks from the township where the ordinance provides for mobile-home parks in designated areas and an area in the township has been designated for a mobile-home park to be developed, and where there is no evidence that the designated land is unsuitable for that use, or that the zoning bodies have consistently denied permits to develop such a park, or have acted in any arbitrary or capricious manner.

Dissenting Opinion by Blair Moody, Jr., J.

See headnote 13.

22. Zoning — Mobile Homes — Ordinances — Constitutional Law.

The burden of proof, in most instances, is upon the person attacking the constitutional validity of a zoning ordinance; the burden of proof does not shift to the municipality to justify restricting mobile homes to designated areas where the party attacking the zoning ordinance has presented no facts which would indicate that the ordinance results in total or de facto exclusion of mobile homes from the municipality.

23. Zoning — Ordinances — Constitutional Law — Presumptions.

The presumption is in favor of the constitutional validity of a zoning ordinance, and a reviewing court has a duty to conceive of possible rational bases to support the ordinance; if a state of facts which would warrant the ordinance can be reasonably perceived, those facts will be presumed to exist, and in the absence of evidence tending to rebut the presumption of validity, the ordinance's validity should be upheld.

24. Zoning — Ordinances — Constitutional Law — Presumptions.

Where any evidence is presented which tends to rebut the presumption of the constitutional validity of a zoning ordinance, the court must determine whether room for fair and legitimate

*differences of opinion exists concerning whether it is reasonable to draw a classification or exclude a use; if such a debatable question exists, the court must exercise judicial restraint and uphold the ordinance.*

25. ZONING — MOBILE HOMES — CONSTITUTIONAL LAW — POLICE POWER.

*No constitutional infirmity exists on the face of a zoning ordinance restricting the occupancy of mobile homes to approved mobile-home parks because the means employed by the ordinance may have a reasonable relationship to valid legislative zoning goals relating to public health, safety and general welfare; a constitutional challenge to the ordinance should, therefore, be rejected where no evidence is presented tending to indicate that permissible legislative zoning goals would not be served by applying the ordinance and thus restricting the proposed use of the land.*

26. ZONING — MOBILE HOMES — ORDINANCES — CONSTITUTIONAL LAW.

*An ordinance restricting mobile homes to mobile-home parks has reasonable grounds in the police power because rational bases may exist for distinguishing between mobile homes and homes built at the site; mobile homes in a residential district may tend to depress property values of conventional dwellings; the development or growth potential of an area for residential purposes may be stunted; some deference should be given to a community's plan for development; a sufficient number of mobile homes may tend to deteriorate more quickly than conventional dwellings; some mobile homes may not be as secure, thus requiring concentrated public protection efforts; mobile homes can be placed more rapidly than conventional dwellings and may thus cause a sudden and severe load on municipal facilities; and there may be differences in degree in the supplying of municipal services for and regulation of mobile homes.*

*Scholten & Fant* (by *R. Neal Stanton)* for plaintiff.

*Hoffman & Watts* for defendants.

Amici Curiae:

*Casey, Scott & Canfield* (by *Edward F. Canfield,*

*Andrew P. Murphy, Jr.,* and *Robert E. Heggestad)*
for Manufactured Housing Institute, Inc.

*Bauckham, Reed, Lang, Schaefer & Travis, P.C.,*
for Michigan Townships Association.

LEVIN, J. In this case we revisit the holding of
*Wyoming Twp v Herweyer,*[1] and consider whether
a municipality constitutionally may provide that
mobile homes are to be sited only in mobile-home
parks and exclude all mobile homes from other
residential zones.

Robinson Township commenced this action
against Donald and Merle Knoll, seeking removal
of a mobile home from their 80-acre parcel of land.

Count I of the complaint alleged that the use of
the mobile home was contrary to § 307.1 of the
township's zoning ordinance,[2] which provides that
mobile homes may be located only in mobile-home
parks, and to § 1302.1 of the ordinance,[3] which
requires that a building permit be obtained before

---

[1] *Wyoming Twp v Herweyer,* 321 Mich 611; 33 NW2d 93 (1948).

[2] *"Mobile Homes—Where Permitted:* Mobile homes are considered
as dwelling units and are not permitted as an accessory use to a
permitted principal use and are permitted only in approved mobile
home parks." Robinson Township Zoning Ordinance, § 307.1.

[3] *"Application.* Except as otherwise provided, it shall be unlawful to
erect any new building or structure or to alter any existing building
or structure at a cost of $200.00 or more until a permit therefor has
been obtained from the building inspector by the owner or his duly
authorized agent. Application for a permit shall be in writing and
upon duplicate printed forms furnished by the building inspector.
Such permits shall be non-transferable and must be obtained before
any work, excavation, erection, alteration, or movement is begun.
Satisfactory evidence of ownership of the premises may be required
by the building inspector and shall be furnished upon request. If the
application is approved, the building inspector shall so mark both
copies over his signature, shall file one copy in the office of the
township clerk of Robinson Township, and return the other copy to
the applicant together with a construction card signed by the building
inspector stating the extent of the work authorized, which card shall
be attached to and remain on the premises during the progress of the
work authorized." *Id.,* § 1302.1.

the erection of a building or structure on any property in the township. Count II alleged that because of violation of the same sections of the ordinance, the mobile home was a nuisance per se.

The answer raised affirmative defenses based on the unconstitutionality of the ordinance in that it arbitrarily and capriciously prohibits a proper land use, and is overbroad, failing to establish clear standards to be observed by property owners and citizens of the township.

Trial was had on stipulated facts, including: the home had been placed on the parcel; the parcel was not a mobile-home park; no building permit had been obtained; and the Knolls had dug a well, obtained a septic permit, applied for power from Consumers Power Company, cleared trees for a roadway and erected a rail fence around the site. No claim was made that the dwelling was not a mobile home within the meaning of the ordinance.

The trial judge, citing *Wyoming Twp v Herweyer,* held that "unless and until such decision is reversed", the provision that mobile homes are permitted only in mobile-home parks was valid, and accordingly ordered removal within 30 days.

The Court of Appeals reasoned that because 1) there was no existing mobile-home park in the community, and—given the state of construction on a newly approved mobile-home park—"the use of land for mobile homes is neither imminent nor a factual certainty" and 2) "[a]s a matter of law", "a single mobile home [is not] a nuisance per se or detrimental to public health, safety, morals or general welfare, either", the township had totally excluded a legitimate use from the entire township.[4] The Court found no justification for this

---

[4] *Robinson Twp v Knoll,* 70 Mich App 258, 264-266; 245 NW2d 709 (1976).

total exclusion, and held the ordinance unconstitutional. The Court found its conclusion reinforced in that the Knolls' land was so zoned that it could be licensed as a mobile-home park, commenting that "if the existence of such a park on that site poses no threat to 'public health, safety, morals or general welfare', it is difficult to perceive how the existence of one mobile home could do so".

We agree with the Court of Appeals that the ordinance is unconstitutional, but on other grounds.

We hold:

(1) The per se exclusion of mobile homes from all areas not designated as mobile-home parks has no reasonable basis under the police power, and is therefore unconstitutional.[5]

The reasoning on which the rule of *Wyoming Twp v Herweyer* was based is no longer valid in light of improvements in the size, quality and appearance of mobile homes, and that decision and cases to the same effect are overruled as to housing that is not a "trailer".

We add, however, that a municipality need not permit all mobile homes, regardless of size, appearance, quality of manufacture or manner of on-site installation, to be placed in all residential neighborhoods. A mobile home may be excluded if it fails to satisfy reasonable standards designed to assure favorable comparison of mobile homes with site-built housing which would be permitted on the site, and not merely because it is a mobile home.

The Robinson Township ordinance embodies a per se rule segregating mobile homes from residential zones that are not mobile-home parks, and is therefore unconstitutional.

(2) The complaint also alleged violation of the

---

[5] Const 1963, art 1, § 17.

provision of the zoning ordinance relating to build-ing permits. A building permit could not have issued because of the per se rule confining mobile homes to mobile-home parks. It necessarily would have been futile for the Knolls to apply for one. For this reason, the township is entitled to no relief based on the Knolls' failure to apply for a building permit.

(3) We intimate no opinion whether building code provisions may now be invoked against the Knolls, leaving that question for consideration by the circuit court should the township seek further relief on that basis.

We vacate the judgment of the Court of Appeals, and remand to the circuit court for further pro-ceedings not inconsistent with this opinion.

Municipalities throughout the state have as-sumed the continuing validity of the rule of *Wyo-ming Twp v Herweyer* in drafting their ordi-nances. We reserve the question whether our deci-sion overruling that opinion as applied to housing other than "trailers" should be applied retroac-tively in other pending cases or to other ordi-nances and, if so, whether retroactivity should be conditioned upon compliance with reasonable stan-dards designed to assure favorable comparison of the mobile home in question with site-built hous-ing which would be permitted on the site.[6]

I

In *Kropf v Sterling Heights,*[7] this Court said

---

[6] This case was tried on a stipulation of facts. The record shows that the mobile home placed on the Knolls' land is 14' × 70', and that some improvements have been made. There is no indication that this mobile home is of a kind that the township could exclude. Our decision, however, is not based on a determination that this mobile home could not constitutionally be excluded.

[7] *Kropf v Sterling Heights,* 391 Mich 139, 157; 215 NW2d 179 (1974).

that "[a] plaintiff-citizen may be denied substantive due process by the city or municipality by the enactment of legislation, in this case a zoning ordinance, which has, in the final analysis, no reasonable basis for its very existence".

A "reasonable basis" must be grounded in the police power,[8] which this Court has defined as including "protection of the safety, health, morals, prosperity, comfort, convenience and welfare of the public, or any substantial part of the public".[9]

The township's argument based on the land planning principle that like uses should be grouped and incompatible uses kept separate begs the question raised by the appeal: do mobile homes differ from other single-family dwellings in any constitutionally cognizable manner which would justify their per se classification as a different use? If not, then the ordinance limiting mobile homes to mobile-home parks has "no reasonable basis for its very existence".

In *Kropf,* we reaffirmed the principle that " '[w]hile an ordinance must stand the test of reasonableness, the presumption is in favor of its validity and courts may not invalidate ordinances unless the constitutional objections thereto are supported by competent evidence or appear on their face' ".[10]

---

[8] "The power of the city to enact ordinances is not absolute. It has been given power by the State of Michigan to zone and regulate land use within its boundaries so that the inherent police powers of the state may be more effectively implemented at the local level. But the state cannot confer upon the local unit of government that which it does not have. For the state itself to legislate in a manner that affects the individual right of its citizens, the state must show that it has a sufficient interest in protecting or implementing the common good, via its police powers, that such private interests must give way to this higher interest." *Id.*

[9] *Cady v Detroit,* 289 Mich 499, 504-505; 286 NW 805 (1939).

[10] *Kropf v Sterling Heights, supra,* p 156, quoting *Northwood Properties Co v Royal Oak City Inspector,* 325 Mich 419, 423; 39 NW2d 25 (1949).

The Knolls, having failed to produce any evidence in the circuit court, can succeed only if the rule that no mobile home may be located outside a mobile-home park is invalid on its face.

We believe that it is.[11]

## II

*Wyoming Twp v Herweyer,* holding that a municipality may constitutionally limit trailers to trailer parks, would seem to be dispositive of this case, and was so treated by the trial judge. We conclude, however, that it does not control.

That case, decided over 30 years ago, dealt with trailers. Today, we consider the per se exclusion not of trailers, but of mobile homes—and more than the label has changed with time. The mobile home today can compare favorably with site-built housing in size, safety and attractiveness. To be sure, mobile homes inferior in many respects to site-built homes continue to be manufactured. But the assumption that all mobile homes are different from all site-built homes with respect to criteria cognizable under the police power can no longer be accepted.

## A

Section 203 of the township's zoning ordinance defines "mobile home" as "[a] movable or portable dwelling constructed to be towed on its own chassis, connected to utilities and designed without a permanent foundation for year-round living as a single-family dwelling".

If mobile homes are to be excluded from all residential zones in Robinson Township other than

[11] See fn 6.

mobile-home parks, it cannot be because they are "movable or portable". Site-built homes are "movable or portable", although they are rarely moved.

We note in this regard that § 500.2 of the township's building code[12] specifically provides for the issuance of moving permits to allow the relocation of one- or two-family dwellings from outside the township or from another location within the township. Any dwelling covered by § 500.2 is, by the township's definition, movable. It would be arbitrary to discriminate against mobile homes on that basis.

Nor do the criteria "constructed to be towed on its own chassis" and "designed without a permanent foundation" identify characteristics which justify the exclusion and segregation of mobile homes.

One can agree that a community has a legitimate interest in safeguarding residents against, for example, windstorm damage, justifying a requirement that a mobile home be firmly attached to a solid foundation on the site. And a municipality may reasonably conclude that a dwelling the wheels and chassis of which are exposed is un-

---

[12] The section provides in part:

"*Moving Permit:* Any person desiring to move any one- or two-family dwelling and/or accessory building from outside of the township limits to any location within the township or from one location to another location within the township shall file a written application for a moving permit with the Township Board of Appeals. Said application shall set forth the present location of said building and/or buildings, the location of [sic] which said building or buildings are proposed to be moved within the township, the age of the building or buildings, a statement as to whether or not the building or buildings comply with the requirements of the building code and if not what improvements applicant proposes to make to bring said building or buildings in compliance with the building code. The application shall be accompanied by a site map as required by Sec. 501.1 of the Building Code and said map shall clearly indicate front, side and rear yards as required by Sec. 501.2 of the Building Code." Robinson Township Building Code, § 500.2.

sightly or is likely to lead to transience and should not be tolerated alongside site-built homes. These and similar considerations would justify requirements that certain on-site modifications be made as a condition to placement of a mobile home in an area not a designated mobile-home park. The ordinance governing moving permits, discussed above, employs such a mechanism.[13]

The ordinance defining "mobile home", however, reflects no such concerns. To say that a dwelling was "constructed to be towed on its own chassis" or "designed without a permanent foundation" speaks only to its origin and not to its present characteristics.

Just as "the reasonableness of a zoning restriction must be tested according to existing facts and conditions and not some condition which might exist in the future",[14] so must an ordinance restricting the placement of mobile homes be directed to the dwelling as it will exist on the land,

[13] "The Board of Appeals shall make or cause to be made an investigation in regard to such application, and if it be determined that the building and/or buildings complies with and is in conformity to the Robinson Township Building Code or will be brought into conformity with said code by the applicant and that such building and/or buildings at the proposed new location will not be injurious to the contiguous property and the surrounding neighborhood, the Board of Appeals may grant a moving permit, and if the applicant is required to make any improvements or changes to bring said building or buildings into conformity with the Building Code the permit shall specify such requirements. If any improvements or alterations in the amount of $200.00 or more are required, the applicant shall apply for and secure a permit for such alterations pursuant to this ordinance before moving said building and/or buildings under the moving permit issued by the Board of Appeals.

"The foundations and all other new portions, improvements or alterations to said building or buildings shall be constructed in conformity with the Township Building Code and the use, location of said building or buildings and yard areas shall conform to the Robinson Township Zoning Ordinance and Building Code." *Id.,* § 500.2.

[14] *Christine Building Co v Troy,* 367 Mich 508, 516; 116 NW2d 816 (1962).

and not, as here, to its characteristics when delivered to the site.

## B

While the characteristics specified in the ordinance are not themselves a basis for the disparate treatment of mobile homes, they do serve to identify "the mobile home". If that label implies the existence of other (but unspecified) characteristics which provide a basis for restricting mobile homes to mobile-home parks, there is a valid purpose for the ordinance.

We are unable to identify any inherent characteristics of mobile homes that justify the per se rule of the ordinance.

Amicus curiae Michigan Townships Association argues that the segregation of mobile homes is justified on aesthetic grounds.

It appears that mobile homes can be designed or modified to compare favorably in appearance to many site-built homes. There is no longer reason to presume that mobile homes will fail to live up to a community's aesthetic standards. Reasonable requirements to assure favorable comparison with those standards, of course, can be imposed by a municipality.

Concerns based in health and safety are also illusory. A municipality, again, is free to deal with concerns of this type in a reasonable code. Standards to assure that mobile homes compare favorably to other housing in, for example, insulation, adequacy of plumbing, and size of the living space exist[15] or can be imposed. And, as we have noted, a

[15] See Department of Housing and Urban Development, Mobile Home Construction and Safety Standards, 24 CFR § 3280.

See A Comparison Between HUD's Mobile Home Construction and Safety Standards (1975) and Building Officials and Code Administra-

community may impose requirements to assure protection from windstorm damage.

Another concern that has been voiced is that mobile homes are given to transient use. The practical necessities attending the installation of a single mobile home in an area in which site-built housing is allowed, along with conditions (such as those discussed above) that a township might reasonably attach to such mobile-home use, vitiate this cause for concern. A parcel of land of sufficient size to meet community standards probably will have been purchased by the mobile-home owner. Utility lines may be installed to the site; the municipality may require that a foundation to which the home will be firmly attached be laid, and other on-site modifications may be made to bring the mobile home and the parcel on which it is located into conformity with community aesthetic standards. In light of the investment required to so install a mobile home as a single-family dwelling, it is unreasonable to assume the mobile-home dweller will stay only a short time.[16]

tors (BOCA) Single Family Dwelling Code (1975), which is Appendix C in the brief of amicus curiae Manufactured Housing Institute, Inc.

[16] "At their location [mobile homes] are removed from the axles and wheels and placed on concrete pads and piers each about 6 to 7 feet apart. In addition, with units constructed during the last 3 years, hurricane bands built into the walls of the units are anchored with bolts augered 3 to 4 feet into the ground.

"[O]nce put in place and made immobile, they are often skirted around their bases. According to plaintiffs' witness, between 75 and 80 percent of mobile homes once located are never moved. When they are moved, it takes approximately three days to dismantle the mobile home and set it up for moving, and several more days to replace it in its new location. At present prices moving expenses will range from $500 for a single-wide, to $1000 for a double-wide." *Gates v Howell,* 204 Neb 256, 262; 282 NW2d 22 (1979).

"It need hardly be pointed out that these double width homes are intended to remain on site permanently, and that their removal by cranes or other heavy machinery would undoubtedly entail considerable difficulty and oftentimes considerable damage to the landscape. Insofar as the single width homes are concerned their removal would also entail some difficulty since in their current models they may be

The disparate treatment of mobile homes seems to be based on attitudes which once had but no longer have a basis in fact:

"Community fear of blight can be traced to the low quality of both the early trailers and their parking facilities. Economic conditions of the 'thirties, followed by wartime housing shortages and rapid relocations of the labor force, pressed many thousands of unattractive trailers into permanent use. Often these units were without running water or sanitary facilities. There were no construction standards to insure even minimum protection against fire or collapse. They were parked in areas which were usually crowded, poorly equipped, and generally unsuited to residential use. As a result, conditions in these parks seldom exceeded minimum health and sanitation standards. The specter of such parks teeming with tiny trailers made community apprehension understandable. But substantial improvements in the quality of both mobile homes and park facilities may have undermined the bases for this antipathy today. The mobile home currently produced is an attractive, completely furnished, efficiently spacious dwelling for which national construction standards have been adopted and enforced by the manufacturers' associations."[17]

as much as seventy feet long and fourteen feet wide. Here, as with the double width homes, the intent that they remain on site permanently is entirely evident." *Koester v Hunterdon County Board of Taxation,* 79 NJ 381, 386; 399 A2d 656 (1979).

Transient use could be expected, if at all, only of mobile homes located in, rather than away from, mobile-home parks. But even this expectation is not supportable in fact, for "[w]hile mobile homes were originally for transient purposes, today about 60% of all mobile homeowners never move their home. The MHMA [Mobile Home Manufacturers' Association] reports that the average stay in one location by mobile-home owners is 58 months, which is approximately the same residency duration as in conventional housing. About 70% of the mobile homes used since World War II have been used as permanent dwellings." Neithercut, *The Mobile Home: Problems With Its Recognition as a Valid Housing Source,* Newsletter, Real Property Section, State Bar of Michigan (No 10, Dec, 1975), p 25.

[17] Note, *Toward an Equitable and Workable Program of Mobile Home Taxation,* 71 Yale L J 702-703 (1962).

Decisions from other jurisdictions, while not directly on point, support the view that per se discrimination against mobile homes can no longer be legitimized.

In holding that mobile homes intended to be used as permanent dwellings are taxable as real property, the New Jersey Supreme Court explained that "[t]he early house trailers, which originated a half century ago, have been described as makeshift contraptions 'not really fit for permanent human habitation.' * * * That they were then viewed as personal property can have little relevance when dealing with modern mobile homes * * *. These modern homes not only have all of the facilities of conventional homes, including sewage, water, lighting, heating and air conditioning, but also are more and more being constructed to look like and be used as conventional homes".[18]

The Nebraska Supreme Court, holding that mobile homes cannot be taxed as motor vehicles, observed that "[t]he evidence in this case discloses that the mobile homes in question resemble in all respects a residence. * * * The evidence in this record further discloses that the interiors of these mobile homes resemble a residence in every respect, and one looking at the exhibits disclosing the interior of these mobile homes, if not advised that in fact they were mobile homes, would not be able to distinguish them from any other residence".[19]

The New Mexico Supreme Court recently held that the mobile home there in question was "substantially the same as a conventional one-family dwelling" and therefore "does not violate the let-

---

[18] *Koester v Hunterdon County Board of Taxation, supra,* p 388.

[19] *Gates v Howell, supra,* pp 262-263.

ter or the spirit" of a subdivision's restrictive
covenant prohibiting trailers.[20] The description of
that mobile home demonstrates that mobile homes
are not inherently incapable of achieving the aes-
thetic and comfort standards of conventional
dwellings: ·

"Parker purchased two lots in the Deming Ran-
chettes subdivision in 1975 and 1977. He bought a
double-wide mobile home and moved it on the lots. The
wheels, axles, and running gear were removed and sold,
and the home was placed on a concrete and slump stone
foundation. The mobile home has three bedrooms, two
full baths and contains 1,440 square feet of floor space.
A patio, a 200 square foot porch, sidewalks, and a 672
square foot two-car garage were constructed. A water
well was drilled and a septic tank was installed. Both
were connected to the mobile home. A conventional
style asbestos shingle roof and aluminum siding were
added to the home. A garden was planted and 210 trees
were obtained to be planted.

"Parker testified that he and his wife intended to
reside in the home permanently. Photographs admitted
into evidence showed that their home had the appear-
ance of a conventional single-family dwelling. It com-
pares favorably with other homes in the subdivision."[21]

The legislatures of various states have provided
that mobile homes may be taxed as real property,[22]
and one statute prohibits ordinances which, like
Robinson Township's, discriminate against mobile
homes.[23]

---

[20] *Heath v Parker*, 93 NM 680, 682; 604 P2d 818 (1980). See, also,
*Hussey v Ray*, 462 SW2d 45 (Tex Civ App, 1970); *Manley v Draper*, 44
Misc 2d 613; 254 NYS2d 739 (1963).

[21] *Heath v Parker, supra*, pp 680-681.

[22] See Neb Rev Stat 1978 Cum Supp, § 77-202.12, and statutes cited
in *Koester v Hunterdon County Board of Taxation, supra*, pp 388-389.

[23] In 1975, the Vermont Planning and Development Act was
amended to provide that, subject to certain minor exceptions, "no
zoning regulation shall have the effect of excluding mobile homes,

Moreover, Robinson Township's building code allows for prefabricated housing which is assembled at the site.[24] There can be no reasonable basis for distinguishing between mobile homes and other prefabricated dwellings. Both are "movable or portable", and may be similar in appearance and constructed of similar materials. It is not a valid basis for distinction under the police power that one is not only prefabricated but also preassembled, and "constructed to be towed on its own chassis".

This is not to say that a municipality must permit all mobile homes, regardless of size, appearance, quality of manufacture or manner of installation on the site, to be placed wherever site-built single-family homes have been built or are permitted to be built. Nor do we hold that a municipality may no longer provide for mobile-home parks. We hold only that a per se restriction is invalid; if a particular mobile home is excluded from areas other than mobile-home parks, it must be because it fails to satisfy standards designed to assure that the home will compare favorably with other housing that would be allowed on that site, and not merely because it is a mobile home.

---

modular housing, or other forms of prefabricated housing from the municipality, except upon the same terms and conditions as conventional housing is excluded". Vt Stat Ann, tit 24, § 4406(4). Former Vt Stat Ann, tit 24, § 4407(11), which permitted a municipality to confine mobile homes to mobile-home parks, was repealed.

[24] *"Approval of Alternate Types of Construction and Materials.—* The building inspector may approve the use of types of construction such as prefabricated houses or materials that vary from the specific requirements of this Code if, (1) such alternate types of construction or materials comply with the recommended standards of government agencies or other national organizations which publish recognized standards relative to building materials and workmanship, or, (2) reports of agencies or laboratories generally accepted as competent by engineering authorities indicate that alternate materials or construction equal or exceed the applicable Code requirements." Robinson Township Building Code, § 102.

We affirm the finding of the Court of Appeals that the ordinance is unconstitutional but vacate its judgment and remand to the circuit court for further proceedings not inconsistent with this opinion. No costs, a public question.

KAVANAGH, WILLIAMS, and FITZGERALD, JJ., concurred with LEVIN, J.

COLEMAN, C.J. *(dissenting).* Leave to appeal was granted in this case to include consideration of the continuing validity of *Wyoming Twp v Herweyer,* 321 Mich 611; 33 NW2d 93 (1948), in which this Court upheld the constitutionality of an ordinance restricting the occupancy of mobile homes to mobile-home parks.[1]

In addition to the issue mentioned in the order granting leave to appeal, the parties also raise other issues, including whether the classifications in and the application of the zoning ordinances fall unconstitutionally upon defendants' property. Although this case could possibly have been resolved upon one of the more limited issues raised and relied upon by the Court of Appeals, my colleagues have reached out far beyond these issues and the perimeters of this case to strike down in general terms the mobile-home zoning classifications relied upon across this state and the nation.

A fundamental rule of judicial review is that a constitutional issue need not be reached when another ground exists for resolving the case, see *MacLean v State Board of Control for Vocational Education,* 294 Mich 45; 292 NW 662 (1940). A corollary to this rule is that if several constitutional issues are raised, the Court should not proceed to dispose of the case on the broadest

---

[1] See *Robinson Twp v Knoll,* 406 Mich 1007 (1979).

constitutional issues, if other more specific issues could dispose of it. However, despite these well-founded principles of judicial review, the majority opinion appears to have completely bypassed the more limited issues which may have provided a vehicle for resolving this matter. In the process of holding the mobile-home zoning classification unconstitutional *on its face* and concluding that mobile homes can be located anywhere in any type of residential neighborhood, subject to some as yet unresolved criteria, the majority's opinion has passed by the other questions raised. Also, while stating the facts of the case, the majority ignores them—and by some broad generalizations, with no clear direction to bench, bar and parties to any suit, simply states that there is no reasonable governmental interest being advanced by classifying mobile homes as a use separate from other residential uses.

Although I would prefer to resolve the other issues raised by defendant before addressing the constitutionality of mobile-home zoning classification per se, the majority's opinion addresses the broadest issue first. Accordingly, I must also address the most sweeping issue first.

That issue is whether the classification of mobile homes as a separate use for zoning purposes is constitutional. Accordingly, the defendants have the burden of showing that no governmental interest is being advanced by the present classification. They have not sustained that burden.

I

Article III, § 307.1 of the Robinson Township Zoning Ordinance provides:

"*Mobile Homes—Where Permitted:* Mobile homes are

considered as dwelling units and are not permitted as an accessory use to a permitted principal use and are permitted only in approved mobile home parks."

The ordinance does not restrict mobile-home parks (including mobile-home subdivisions) to any particular zone, but it does require approval of the location and plan by the Board of Appeals. It also places with the board the power to hear and decide applications for "special exceptions, special or conditional uses" and other special questions. Defendants did not apply for a variance or a special exception. They did not apply for a mobile-home park permit or a building permit. The property was not shown to be subject to a non-conforming use. The mobile home was not placed prior to the effective date of the ordinance.

Article II, § 203 of the pertinent zoning ordinance describes a mobile home as:

"A movable or portable dwelling *constructed to be towed on its own chassis,* connected to utilities and *designed without a permanent foundation* for year-round living as a single-family dwelling." (Emphasis added.)

At the outset, one should note that this case involves mobile homes, not modular or prefabricated homes.

Comparisons between mobile homes and modular homes or prefabricated homes are inapposite, if for no other reason, because of the definition of a mobile home.

Moreover, modular homes and prefabricated homes are designed to become parts of site-built residences for which building permits are required and which are subject to approval by the building inspector. No such permit was sought or granted

in this case. There is no dispute that the home in question is a mobile home by definition.

Likewise, the argument that other homes can be moved is inapposite. A site-built home is not constructed to be "towed on its own chassis" down a road. Some homes of appropriate size can be removed from their foundations and moved to another site. However, they are not built to be towed or to blend with the flow of traffic. On-site construction is not directed to that purpose. It serves no good purpose to belabor this point further.

## II

In *Kirk v Tyrone Twp,* 398 Mich 429, 439-440; 247 NW2d 848 (1976), this Court summarized the appropriate standard for determining the constitutional validity of a zoning determination as follows:

"The principles and tests to use to determine whether the present zoning of plaintiffs' property is valid [were] detailed in *Kropf [v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974)].

"The important principles require that for an ordinance to be successfully challenged plaintiffs prove:

" '[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or

" '[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.' 391 Mich 139, 158.

"The four rules for applying these principles were also outlined in *Kropf.* They are:

"1. ' "[T]he ordinance comes to us clothed with every presumption of validity." ' 391 Mich 139, 162, quoting from *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

"2. ' "[I]t is the burden of the party attacking to prove

affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property * * *. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness." ' 391 Mich 139, 162, quoting *Brae Burn, Inc.*

"3. 'Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted.' 391 Mich 139, 162-163.

"4. ' "This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases." ' 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962)."

See, also, *Ed Zaagman, Inc v Kentwood,* 406 Mich 137; 277 NW2d 475 (1979).

Although my colleagues pay some attention to how the ordinance falls upon these defendants, the leap ultimately is made to the argument that because some mobile homes are improved in appearance and construction (defendant's is not described as within this context), all must be considered for placement in areas zoned for other residential uses despite not only *Wyoming,* but also *Kirk, Kropf, Zaagman* and all other Michigan precedent, old and new.

### III

For the purposes of constitutional analysis, the ordinance comes to us with every presumption of constitutionality, which can be overcome only by finding that no governmental interest is served thereby.

Zoning restrictions are enacted pursuant to the

police power. This power encompasses regulations designed to advance the public's health, safety and welfare. MCL 125.273; MSA 5.2963(3) provides that a zoning ordinance designed to promote the public health, safety and welfare shall be made "with reasonable consideration, among other things, to [sic] the character of each district", the "conservation of property values" and the "general and appropriate trend and character of land, building and population development".

Although the construction of some modern mobile homes has improved and the area of some has been enlarged, basic differences between mobile homes and site-built homes remain. By definition, a mobile home is built without a permanent foundation and must be of a weight and dimensions that can be towed on a highway. They are more susceptible to windstorm and fire damage, which increases the possibility of injury to persons and property in the surrounding area. The police power extends to imposing reasonable regulations to safeguard residents and others against the dangers of such damage.

Plaintiff notes additional problems caused by a general lack of storage space in mobile homes. This lack of storage space may result in personal property being stored outside or the addition of lean-tos. Plaintiff notes that various practical problems result from these conditions.

Also, because a mobile home is designed to be towed on its chassis, they may lead to transience. Increased transience may also result in unsightly and possibly dangerous conditions in the land when the mobile home is removed. Even if the mobile home remains in one spot, it is generally subject to more rapid deterioration than a site-built home. Further, it would be unreasonable to

assume or take judicial notice of the conclusion that all mobile homes compare favorably with site-built homes.

As provided in the statute, classifications may take into consideration the preservation of property values.[2] Accordingly, one widely acknowledged, reasonable governmental interest is the preservation of property values. The value of a piece of property or of property in a zone is dependent not only on the intrinsic nature of the property but also upon the nature and uses of neighboring property. For the most part, even the best of mobile homes (e.g., double-width homes towed in two parts, mobile homes with bay windows on the ends, a porch attached or decorator steps, etc.) are significantly different from site-built homes or are so perceived by many. This perception can have a significant effect on property values if mobile homes are scattered throughout any residential district. Regardless of whether the perception is valid, restricting mobile homes to designated areas furthers governmental interests by furthering the safety, sanitary and recreational needs of the occupants and others, and by grouping like uses together.

With only these surface considerations, it becomes apparent that the defendants have not overcome the burden of proving that there is no room for a legitimate difference of opinion concerning the reasonableness of this classification. The defendants have not overcome the presumption of constitutionality.

---

[2] Although the preservation of surrounding property values and characteristics may not be sufficient by itself to justify these zoning restrictions, see *Senefsky v Huntington Woods,* 307 Mich 728; 12 NW2d 387 (1943), these factors may be taken into consideration along with the other factors mentioned above, see MCL 125.273; MSA 5.2963(3).

## IV

While the zoning authorities might have been able to advance similar objectives by less restrictive means, they were not constitutionally required to do so if there exists some reasonable basis for the classifications chosen. In *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 542; 273 NW2d 829 (1979), this Court stated:

" 'If the classification has some "reasonable basis", it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality". * * * "The problems of government are practical ones and may justify, if they do not require, rough accommodations * * *" '.

" 'If it be said, the law is unnecessarily severe, and may sometimes do injustice, without fault in the sufferer under it, our reply is: these are considerations that may very properly be addressed to the legislature, but not to the judiciary—they go to the expediency of the law, and not to its constitutionality.' "

In *Village of Euclid v Ambler Realty Co,* 272 US 365, 388-389; 47 S Ct 114; 71 L Ed 303 (1926), the Supreme Court stated:

"Here, however, the exclusion is in general terms of all industrial establishments, and it may thereby happen that not only offensive or dangerous industries will be excluded, but those which are neither offensive nor dangerous will share the same fate. But this is no more than happens in respect of many practice-forbidding laws which this Court has upheld although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. *Hebe Co v Shaw,* 248 US 297, 303; 39 S Ct 125; 63 L Ed 255 (1919), *Pierce Oil Corp v City of Hope,* 248 US 498, 500; 39 S Ct 172; 63 L Ed 381 (1919). The inclusion of a reason-

able margin to insure effective enforcement will not put upon a law, otherwise valid, the stamp of invalidity. Such laws may also find their justification in the fact that, in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the proscribed class. It cannot be said that the ordinance in this respect 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' *Purity Extract & Tonic Co v Lynch*, 226 US 192, 204; 33 S Ct 44; 57 L Ed 184 (1912)." See, also, *Cady v Detroit*, 289 Mich 499; 286 NW 805 (1939).

Zoning classifications designed to group like uses together while at the same time separating incompatible uses necessarily involve generalizations and rough accommodations. If all zoning classifications are now subject to constitutional attacks on the basis that the per se exclusion of certain uses from a zone is unreasonable when the municipality could have adopted more detailed, less restrictive, requirements which would have adequately served the public interest, then it is unlikely that most zoning classifications would survive constitutional scrutiny. For example, a multiple dwelling apartment developer might argue that single-family residence zones are unconstitutional because a zoning ordinance could be drafted imposing more detailed, less restrictive, requirements which would adequately serve the same public interest. Minimum floor space and set-back restrictions based on a family unit could be drafted to assure that the multiple-family apartment building is in a comparable situation with other single-family buildings.

The number of similar hypotheticals that could arise is almost infinite. The Constitution does not impose such restrictions on the zoning authorities. Rather, so long as there is a reasonable basis for the classification chosen, the landowner's remedy lies with the local zoning authorities either through seeking a variance or attempting to change the classification itself.

## V

For these reasons, we continue to adhere to the holding in *Wyoming Twp* that mobile homes may constitutionally be treated differently from site-built homes for zoning purposes. Although many developments have taken place since *Wyoming Twp* was decided, this same issue has recently been considered in other jurisdictions, and these cases have consistently upheld the constitutional validity of the classifications being considered.[3] None of the cases cited in the majority's opinion or

[3] *Davis v Mobile,* 245 Ala 80; 16 So 2d 1 (1943), *McKie v Ventura County,* 38 Cal App 3d 555; 113 Cal Rptr 143 (1974), *Board of County Comm'rs of Jefferson County v Mountain Air Ranch,* 192 Colo 364; 563 P2d 341 (1977), *Town of Hartland v Jensen's, Inc,* 146 Conn 697; 155 A2d 754 (1959), *Cooper v Sinclair,* 66 So 2d 702 (Fla, 1953), *Matthews v Fayette County,* 233 Ga 220; 210 SE2d 758 (1974), *People of the Village of Cahokia v Wright,* 57 Ill 2d 166; 311 NE2d 153 (1974), *City of Colby v Hurtt,* 212 Kan 113; 509 P2d 1142 (1973), *Wright v Michaud,* 160 Me 164; 200 A2d 543 (1964), *Town of Manchester v Phillips,* 343 Mass 591; 180 NE2d 333 (1962), *Town of Granby v Landry,* 341 Mass 443; 170 NE2d 364 (1960), *State v Larson,* 292 Minn 350; 195 NW2d 180 (1972), *State ex rel Wilkerson v Murray,* 471 SW2d 460 (Mo, 1971), *Town of Londonderry v Faucher,* 112 NH 454; 299 A2d 581 (1972), *Vickers v Twp Committee of Gloucester Twp,* 37 NJ 232; 181 A2d 129 (1962), *Mobile Home Owners Protective Ass'n v Town of Chatham,* 33 App Div 2d 78; 305 NYS2d 334 (1969), *Currituck County v Willey,* 46 NC App 835; 266 SE2d 52 (1980), *Davis v McPherson,* 58 Ohio Op 253; 132 NE2d 626 (1955), *Fayette County v Holman,* 11 Pa Commw Ct 357; 315 A2d 335 (1973), *Mobile Home City of Chattanooga v Hamilton County,* 552 SW2d 86 (Tenn App, 1976), *Duckworth v Bonney Lake,* 91 Wash 2d 19; 586 P2d 860 (1978), *Edelbeck v Town of Theresa,* 57 Wis 2d 172; 203 NW2d 694 (1973).

the parties' briefs hold that a zoning regulation may not constitutionally treat mobile homes differently from site-built homes. While this absence of authority is not dispositive, it does lend support to the conclusion that this ordinance is not unconstitutional.

## VI

We also conclude that defendants cannot prevail on their de facto exclusion argument on the record presented in this case. The ordinance in issue speaks of mobile-home parks as including not only traditional parks in which lots are occupied on a rental basis but also mobile-home subdivisions in which lots are subdivided and sold.[4] The zoning ordinance generously provides for mobile-home parks and the zoning authorities have approved an area in the township for a mobile-home park. The mere fact that the park has not been developed (and that others have not applied) is insufficient to prevail on a de facto exclusion claim.

Defendants have not introduced any evidence that the land zoned for a mobile-home park is unsuitable for this use, or that the zoning authorities have consistently denied permits to develop such a park or have acted in any arbitrary or capricious manner. Defendants did not introduce any evidence that they ever sought variance or requested any kind of a permit.

Defendants have failed to show that there is no governmental interest in a mobile-home zoning classification as a separate use.

Therefore, on the record presented, we would

---

[4] Robinson Township Zoning Ordinance, art II, § 203.4, provides:

"*Mobile Home Subdivision:* A mobile home park except that the mobile home lots are subdivided, surveyed, recorded, and sold in accordance with Act 288 of the Public Acts of 1967, as amended."

hold that defendants have failed to overcome the presumption of constitutionality and would uphold the constitutionality of the ordinance.

Finally, the majority's opinion does not settle the question of retroactivity. Because the state (and nation) has to this date relied upon the constitutionality of mobile-home classifications, I would, at a minimum, provide that the opinion take effect prospectively.

RYAN, J., concurred with COLEMAN, C.J.

BLAIR MOODY, JR., J. *(dissenting)*.

## FACTS

This case, tried upon a stipulation of facts, involves the question of whether defendants should be enjoined from using their property in violation of a local zoning ordinance. Subsequent to the effective date of zoning ordinance amendments,[1] defendants placed a 14-foot by 70-foot mobile home[2]

---

[1] Amendments to pertinent sections of the township's zoning ordinance became effective May 14, 1974. Prior to that date, defendants cleared brush and trees from the site, commenced digging a well and obtained a septic permit. However, the mobile home was not placed on defendants' property until after the present zoning ordinance provisions became effective.

[2] Art II, § 203 of the ordinance in effect on the date the Knolls placed the mobile home on their property defines a mobile home as follows:

"A movable or portable dwelling constructed to be towed on its own chassis, connected to utilities and designed without a permanent foundation for year-round living as a single-family dwelling. A mobile home may contain parts that may be separated, folded, collapsed, or telescoped when being towed and combined or expanded later to provide additional cubic capacity."

Art II, § 203.6 of the ordinance defines a travel trailer somewhat differently:

"A transportable unit intended for occasional or short-term occupancy as a dwelling unit during travel, recreational, or vacation use."

Art II, § 203 of the ordinance, in effect prior to the 1974 ordinance amendments, described a mobile home as follows:

"Any house car, house trailer, trailer home, trailer coach or similar

on their property located within the township. The amended ordinance provides that mobile homes are a permitted use only in approved mobile-home parks or mobile-home subdivisions.[3] Defendants stipulated that their land had not been approved for use as a mobile-home park or subdivision. Defendants also admitted that the mobile home was placed upon their property without first having obtained a building permit.[4]

The ordinance defines mobile-home parks and subdivisions[5] and sets forth standards relating to

---

vehicle used or so constructed as to permit its being used as a conveyance upon the public streets or highways and duly licensable as such, and shall include self-propelled vehicles so designed, constructed, or added to by means of accessories in such manner as will permit the occupancy thereof as a dwelling or sleeping place of one (1) or more persons, and having no foundation other than wheels, jacks or skirtings."

[3] Presently, art III, § 307.1 of the ordinance provides:

"Mobile homes are considered as dwelling units and are not permitted as an accessory use to a permitted principal use and are permitted only in approved mobile home parks."

Art III, § 307.4 of the ordinance which had been in effect prior to the 1974 amendments, provided in part:

"No person shall * * * use or occupy or permit the use or occupancy of any trailer coach on any lot or parcel of land in any zoning district not licensed as a trailer coach park, except only as provided in this Ordinance."

[4] Art XIII, § 1302.1 of the township zoning ordinance requires that a building permit be obtained in certain circumstances prior to building or altering structures within the township:

"Except as otherwise provided, it shall be unlawful to erect any new building or structure or to alter any existing building or structure at a cost of $200.00 or more until a permit therefor has been obtained from the building inspector by the owner or his duly authorized agent. Application for a permit shall be in writing and upon duplicate printed forms furnished by the building inspector. Such permits shall be nontransferable and must be obtained before any work, excavation, erection, alteration, or movement is begun."

[5] A mobile-home park is defined in art II, § 203.3 of the ordinance as follows:

"A parcel of land under single ownership which has been planned and improved for the placement of mobile homes on a rental basis for nontransient use."

Art II, § 203.4 defines a mobile-home subdivision:

"A mobile home park except that the mobile home lots are subdi-

approval of such developments. Mobile-home parks and subdivisions are a permitted use in all zoning districts within the township with the exception of recreational use districts.[6]

The stipulation of facts indicates that plans for a proposed mobile-home park have been approved by the township. The proposed park would cover 28 acres and offer facilities for approximately 100 mobile homes. However, at the date of trial no work had commenced on the park. Although it is unclear from the record how defendants' land is presently zoned, there is nothing to indicate that defendants' property could not be used to develop a mobile-home park or subdivision.

Robinson Township brought suit seeking to enjoin defendants' use of their property as violative of township zoning ordinances. The trial court granted the desired injunctive relief. The Court of Appeals reversed. 70 Mich App 258; 245 NW2d 709 (1976).

DISCUSSION

Defendants present a broadside challenge to the constitutionality of the ordinance. The issue, squarely presented, is whether any and all local zoning ordinances which do not totally exclude mobile homes from a community but which restrict the location of mobile homes to mobile-home parks and subdivisions within the community are invalid. In view of the procedural posture of this case, the facial validity of the ordinance, and the insufficient factual development of this record, the

---

vided, surveyed, recorded, and sold in accordance with Act 288 of the Public Acts of 1967, as amended."

[6] The record does not indicate what percentage of land within the township is classified as recreation use districts.

ordinance survives defendants' constitutional challenge.

## I

Prior to placing a mobile home on their property, defendants not only neglected to obtain the requisite building permit but also failed to seek a variance from existing zoning provisions pertaining to their land. Under these circumstances it is questionable whether the Knolls should be permitted to raise constitutional challenges to the ordinance at issue. See *State v Larson,* 292 Minn 350, 356; 195 NW2d 180, 183 (1972); *Napierkowski v Gloucester Twp,* 29 NJ 481, 489; 150 A2d 481, 485 (1959).[7] Further, in rejecting constitutional challenges to similar ordinances, courts have noted the landowner's failure to make use of their land in a manner permitted by zoning ordinances regulating the use and location of mobile homes. *McKie v Ventura County,* 38 Cal App 3d 555, 557; 113 Cal Rptr 143, 144 (1974); *Town of Greenland v Hussey,* 110 NH 269, 272; 266 A2d 122, 124 (1970).

Additionally, defendants have failed to seek relief on other narrower grounds. The siting of individual mobile homes outside mobile-home parks or subdivisions has been permitted in certain cases where the courts were persuaded to either narrowly construe the term "mobile home" or broadly construe the terms "residence" or "dwelling" as defined in local zoning ordinances.[8]

---

[7] In *Napierkowski, supra,* the failure to seek a variance was excused since the record clearly indicated that township officials would have denied a variance had one been sought. The record in the instant case does not support the inference that the seeking of a variance would have amounted to a fruitless effort.

[8] Individual siting of mobile homes was allowed in the following cases through construction of ordinances defining "dwelling", "residence" or similar terms. *Cook County v Hoytt,* 59 Ill App 2d 368; 208

Defendants have instead broadly based their claim for relief on constitutional grounds. In so doing, defendants have pursued the path of greatest resistance.

## II

A successful challenge to the constitutionality of a zoning ordinance requires the establishment of one of the following propositions:

" '[T]here is no reasonable governmental interest being advanced by the present zoning classification * * * or
"'* * * '[The] ordinance * * * [is] unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.' " *Kirk v Tyrone Twp,* 398 Mich 429, 439; 247 NW2d 848 (1976); *Kropf v Sterling Heights,* 391 Mich 139, 158; 215 NW2d 179 (1974).

In the instant case, the burden of proof lies squarely with the defendants. It is axiomatic that in most instances, the burden of proof is placed upon the person attacking the validity of a zoning ordinance. *Kirk,* 439. Defendants have presented

NE2d 410 (1965); *Rundell v May,* 258 So 2d 90 (La App, 1972), *cert den* 261 La 468; 259 So 2d 916 (1972); *Sioux Falls v Cleveland,* 75 SD 548; 70 NW2d 62 (1955).

Mobile-home owners have also been permitted to individually site their homes where the courts narrowly construed the meaning of "mobile home" contained in ordinances restricting mobile homes to mobile-home parks. *Douglass Twp v Badman,* 206 Pa Super 390; 213 A2d 88 (1965); *State v Work,* 75 Wash 2d 204; 449 P2d 806 (1969). But see: *Duckworth v Bonney Lake,* 91 Wash 2d 19; 586 P2d 860 (1978).

Of course, theories advanced by mobile-home owners concerning statutory construction have not always been accepted. See, *e.g., Oakdale v Benoit,* 342 So 2d 691 (La App, 1977), *cert den* 344 So 2d 670 (La, 1977); *Town of Marblehead v Gilbert,* 334 Mass 602; 137 NE2d 921 (1956); *Asheboro v Auman,* 26 NC App 87; 214 SE2d 621 (1975), *cert den* 288 NC 239; 217 SE2d 663 (1975).

It is to be noted that the facts in the instant case are insufficiently developed to raise an issue with respect to these considerations.

no facts which would indicate that the ordinance results in total or de facto exclusion of mobile homes from the township. *Kirk,* 442-444.[9] Rather, the ordinance regulates the location of such land use within the township. In this instance, the burden of proof does not shift to the township to justify exclusion of the use, but remains with defendants.[10]

The Knolls do not contend that the ordinance has been applied in a discriminatory manner so as to prevent the proposed use of their property.[11] Nor have defendants advanced any facts indicating that the ordinance *as applied* is unreasonable or confiscatory.

The sole basis for affording relief is thus premised on the conclusion that constitutional infirmity appears on the face of the ordinance.

### III

The standard of review applicable to zoning ordinances has been a limited one. This developed at least in part from a recognition by a majority of this Court that the functions of local zoning authorities are legislative in nature.

An integral part of this limited standard of

---

[9] The trial judge correctly found:

"Defendants did not specifically allege nor have they proven that plaintiff has carried out a systematic de facto exclusion of mobile home parks from plaintiff township."

[10] See *Clark v Lyon Twp Clerk,* 348 Mich 173; 82 NW2d 433 (1957), and *Gust v Canton Twp,* 342 Mich 436; 70 NW2d 772 (1955), for instances where total exclusion of mobile homes from townships required the township to bear the burden of justifying the exclusion.

[11] Mobile-home owners have obtained relief from ordinances restricting mobile homes to mobile-home parks where it was concluded that the ordinance was enforced in a discriminatory manner. See, *e.g., Blackman Twp v Koller,* 357 Mich 186; 98 NW2d 538 (1959); *People v Husler,* 34 Ill App 3d 977; 342 NE2d 401 (1975); *State v Vadnais,* 295 Minn 17; 202 NW2d 657 (1972).

review is the principle that zoning ordinances are accorded a presumption of validity. *Kropf,* 162; *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957). If this presumption is to have any viability, the reviewing court has a duty to conceive of possible rational bases to support the ordinance. If a state of facts which would warrant the ordinance can be reasonably perceived, those facts will be presumed to exist. In the absence of evidence tending to rebut the presumption, the ordinance's validity should be upheld. Where any evidence is presented which tends to rebut the presumption of validity, the court must determine whether room for *fair* and *legitimate* differences of opinion exists concerning whether it is reasonable to draw a classification or exclude a use. If such a debatable question exists, the court must exercise judicial restraint and uphold the ordinance.[12]

No constitutional infirmity exists on the face of the ordinance in the instant case since the means employed by the ordinance may have a reasonable relationship to valid legislative zoning goals relating to public health, safety and general welfare. No evidence was presented tending to indicate that permissible legislative zoning goals would not be served by applying the ordinance and thus restricting defendants' proposed use of their land. Defendants' challenge, therefore, must be rejected.

## IV

Zoning ordinances regulating the location of mobile homes within a township or municipality by restricting them to mobile-home parks have been upheld generally by this Court and other

---

[12] Conclusory opinions which are not based upon factual predicates would be insufficient means to rebut the presumption of validity or to respond to evidence tending to rebut this presumption.

courts interpreting Michigan law. *Wyoming Twp v Herweyer,* 321 Mich 611; 33 NW2d 93 (1948); *Connor v West Bloomfield Twp,* 207 F2d 482 (CA 6, 1953); *Courtland Twp v Cole,* 66 Mich App 474; 239 NW2d 630 (1976); *Lanphear v Antwerp Twp,* 50 Mich App 641; 214 NW2d 66 (1973). See also *Stevens v Royal Oak Twp,* 342 Mich 105, 109; 68 NW2d 787 (1955).

Challenges to zoning ordinances, similar to the ordinance in the instant case, based upon claims that the ordinance was invalid on its face have been rejected by courts of other states. See, *e.g., Village of Cahokia v Wright,* 57 Ill 2d 166; 311 NE2d 153 (1974); *Wright v Michaud,* 160 Me 164; 200 A2d 543 (1964).

Courts considering the validity of zoning ordinances regulating the location of mobile homes within a community have, nearly universally, concluded that the zoning codes tend to promote the health, safety and welfare of the community's residents and that rational bases may exist for distinguishing between mobile homes and site-built homes.[13] The siting of mobile homes in a given residential district may have a tendency to depress

[13] See, *e.g., Board of Comm'rs of Jefferson County v Mountain Air Ranch,* 192 Colo 364; 563 P2d 341 (1977); *Cooper v Sinclair,* 66 So 2d 702 (Fla, 1953), *cert den* 346 US 867; 74 S Ct 107; 98 L Ed 377 (1953); *Village of Cahokia v Wright, supra* (Illinois); *Colby v Hurtt,* 212 Kan 113; 509 P2d 1142 (1973); *Wright v Michaud, supra* (Maine); *Town of Manchester v Phillips,* 343 Mass 591; 180 NE2d 333 (1962); *State v Larson, supra* (Minnesota); *State ex rel Wilkerson v Murray,* 471 SW2d 460 (Mo, 1971); *Napierkowski v Gloucester Twp, supra* (New Jersey); *People v Clute,* 47 Misc 2d 1005; 263 NYS2d 826 (1965), *aff'd* 18 NY2d 999; 278 NYS2d 231; 224 NE2d 734 (1966); *Duckworth v Bonney Lake, supra* (Washington); *Town of Stonewood v Bell,* 270 SE2d 787 (W Va, 1980).

See also MCL 125.273; MSA 5.2963(3) which enables townships to promulgate zoning ordinances and sets forth legislatively prescribed goals to be achieved through such ordinances:

"The zoning ordinance shall be based upon a plan designed to promote the public health, safety, and general welfare; to encourage the use of lands in accordance with their character and adaptability, and to limit the improper use of land; to conserve natural resources

property values of conventional dwellings.[14] The
development or growth potential of an area for
residential purposes may be stunted.[15] Some defer-
ence should be given to a community's plan for
development.[16]

It may be reasoned that a sufficient number of
mobile homes tend to deteriorate more quickly
than conventional dwellings. From a public safety
standpoint, some may not be as secure, requiring
concentrated protection efforts. Mobile homes can
be sited more rapidly than conventional dwellings
and may thus cause a sudden and severe load on
municipal facilities. There may be differences in
degree in the supplying of municipal services for
and regulation of mobile homes.[17] Accordingly,

and energy; to meet the needs of the state's residents for food, fiber,
and other natural resources, places of residence, recreation, industry,
trade, service, and other uses of land; to insure that uses of the land
shall be situated in appropriate locations and relationships; to avoid
the overcrowding of population; to provide adequate light and air; to
lessen congestion on the public roads and streets; to reduce hazards to
life and property; to facilitate adequate provision for a system of
transportation, sewage disposal, safe and adequate water supply,
education, recreation, and other public requirements; and to conserve
the expenditure of funds for public improvements and services to
conform with the most advantageous uses of land, resources, and
properties. The zoning ordinance shall be made with reasonable
consideration, among other things, to [sic] the character of each
district; its peculiar suitability for particular uses; the conservation of
property values and natural resources; and the general and appropri-
ate trend and character of land, building, and population develop-
ment."

[14] See, e.g., *Cooper v Sinclair, supra; Colby v Hurtt, supra; Town of
Manchester v Phillips, supra; State v Larson, supra; Wilkerson v
Murray, supra; Napierkowski v Gloucester Twp, supra; Duckworth v
Bonney Lake, supra.*

[15] See, e.g., *Colby v Hurtt, supra; Town of Manchester v Phillips,
supra; Wilkerson v Murray, supra; Duckworth v Bonney Lake, supra;*
2 Anderson, American Law of Zoning (2d ed), § 14.01, p 550, § 14.05, p
563.

[16] See, e.g., *Padover v Farmington Twp,* 374 Mich 622; 132 NW2d
687 (1965); *Napierkowski v Gloucester Twp, supra; Duckworth v
Bonney Lake, supra;*

[17] *McKie v Ventura County, supra; State v Larson, supra; Duck-
worth v Bonney Lake, supra.*

there are reasonable bases grounded in the police power for the existence of the ordinance. Furthermore, the record in this case presents no evidence to counter the presumption of the ordinance's validity.

For the foregoing reasons I respectfully dissent. Accordingly, I would reverse the decision of the Court of Appeals.