RICHARD N. GATES AND BETTY B. GATES, APPELLANTS,
v. SAM J. HOWELL ET AL., APPELLEES.

282 N. W. 2d 22

Filed July 31, 1979. No. 42347.

Vard R. Johnson, for appellants.

Paul L. Douglas, Attorney General, Ralph H. Gillan, Donald L. Knowles, Douglas County Attorney, and Rockford G. Meyer, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

By this appeal the State urges us to declare that a "house is not a home;" or more specifically, to determine that a mobile home 24 feet wide and 60 feet long, containing approximately 1,400 square feet, with 3 bedrooms, a kitchen, living room, dining room, 1¾ baths, fully air-conditioned, and carpeted, is properly defined as "a motor vehicle" under the

provisions of section 77-1238, R. R. S. 1943, and as such may be assessed and taxed as a motor vehicle under the provisions of sections 77-1239 to 77-1242.02, R. R. S. 1943, as amended.

Plaintiffs, who are owners of a 1972 Marlette mobile home located in Douglas County, Nebraska, filed their petition in the District Court for Douglas County, Nebraska, seeking, among other things, to have the provisions of sections 77-1238 to 77-1241, R. R. S. 1943, insofar as they applied to plaintiffs' mobile home, declared to be in violation of Article VIII, section 1, of the Constitution of the State of Nebraska, and to further enjoin the collection of such taxes as assessed and levied upon plaintiffs' mobile home pursuant to sections 77-1239 to 77-1241, R. R. S. 1943. The various defendants filed answers generally denying the allegations of the petition and praying that the action be dismissed.

Prior to trial it was stipulated and agreed by the parties that the plaintiffs were residents of Omaha, Douglas County, Nebraska, and the owners of the mobile home as defined in section 60-1601.01, R. R. S. 1943, and described in the petition. It was further stipulated by the parties that the plaintiffs had standing to bring the action on behalf of themselves and all other taxpayers owning mobile homes similarly situated.

After trial the District Court entered its order upholding the constitutionality of taxing mobile homes as motor vehicles under the provisions of sections 77-1239 to 77-1241, R. R. S. 1943, and dismissed plaintiffs' petition. Plaintiffs perfected their appeal to this court setting forth a number of assignments of error, including a claim that taxing mobile homes as motor vehicles under the provisions of sections 77-1239 to 77-1241, R. R. S. 1943, was in violation of Article VIII, section 1, of the Constitution of the State of Nebraska. We agree with the plaintiffs' contention in that regard and find that a mobile home is not a

motor vehicle within the exception provided in Article VIII, section 1, of the Constitution of the State of Nebraska. Therefore, such structure may not be taxed as a motor vehicle due to the fact that such method of taxation results in the mobile home being taxed nonuniformly and disproportionately to all other personal property. Because of that determination, we need not consider other assignments of error raised by the plaintiffs.

While the problem involved in this appeal is of extreme importance, the resolution of the question is not necessarily complicated. Unless we can find and declare that a "mobile home" is in fact a "motor vehicle," the Legislature is prohibited from taxing a mobile home in the same manner as a motor vehicle and different than all other personal property. Merely including a mobile home within the definition of motor vehicle is insufficient. An examination of Article VIII, section 1, of the Constitution of the State of Nebraska, makes such a conclusion apparent and mandatory. Article VIII, section 1, of the Constitution of the State of Nebraska, provides, in part, as follows: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct. Taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, except that the Legislature may provide a different method of taxing motor vehicles * * *."

Prior to 1952, Article VIII, section 1, of the Constitution of the State of Nebraska, contained no exceptions, and provided as follows: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon

all other property. Taxes, other than property taxes, may be authorized by law. Existing revenue laws shall continue in effect until changed by the Legislature.''

The language of Article VIII, section 1, of the Constitution of the State of Nebraska, has oftentimes been reviewed by this court. In each instance, we have clearly and unequivocally found that the provisions of Article VIII, section 1, require not only that the valuation of property for taxation be uniform, but the rate as well. Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85. In that case we said: ''In every instance where this court has spoken upon the subject, it has been determined that the legislature is powerless to relieve from the burdens of taxation the property of any individual or corporation, but that the constitutional rule of uniformity requires all taxable property within the taxing district where the assessment is made shall be taxed, except property specifically exempt by the fundamental law. This doctrine is entirely sound, and the language of the constitutional provision we have been considering will not authorize or permit any other or different interpretation.'' To the same effect, see, State v. Savage, 65 Neb. 714, 91 N. W. 716; High School District v. Lancaster County, 60 Neb. 147, 82 N. W. 380.

It is therefore clear that under the provisions of Article VIII, section 1, of the Constitution of the State of Nebraska, as it existed prior to 1952, *all* tangible personal property, including motor vehicles, was required to be valued and taxed uniformly and proportionately.

In 1952, the people of the State of Nebraska amended Article VIII, section 1, of the Constitution of the State of Nebraska, by providing the exception with regard to motor vehicles, and authorizing the Legislature to provide for a different method of taxing motor vehicles.

It was this basic amendment made in 1952 which

has resulted in motor vehicles being assessed and taxed in a different manner from other personal property as now prescribed in sections 77-1238 through 77-1242.02, R. R. S. 1943, as amended.

The differences between the taxation of motor vehicles and all other personal property are significant. All personal property subject to taxation other than motor vehicles and those items of personal property further specifically exempted under subsequent amendments to Article VIII, section 1, is valued for purposes of taxation as of January 1 of each year, section 77-1201, R. R. S. 1943, and shall be valued at its actual value which shall then be assessed at 35 percent of such actual value. § 77-201, R. R. S. 1943.

On or before September 1 of each year, the county board of equalization then levies the necessary taxes for the current year, which taxes then become due and owing on December 1 of the assessment year. § 77-1601, R. R. S. 1943.

Motor vehicles on the other hand are assessed on the basis of a schedule of actual values prepared by the Tax Commissioner. § 77-1239, R. S. Supp., 1978. Taxes are assessed and collected at the time the motor vehicle is registered based upon a tax equal to the ad valorem rate for all purposes for the *preceding* year in the several taxing units of the state in which the motor vehicle has tax situs. § 77-1240.01, R. R. S. 1943. Moreover, upon the transfer of ownership of any motor vehicle, the transferor shall be credited with the number of unexpired months remaining in the registration period and shall receive a refund back for such unused tax. § 77-1240.03, R. R. S. 1943. No similar provision is made with regard to other personal property.

It is therefore clear that the method of taxation and perhaps even the manner of assessment between motor vehicles and all other personal property is different and is not uniform. But for the exemptions specifically provided for in Article VIII,

section 1, of the Constitution of the State of Nebraska, for motor vehicles, such procedure would be totally invalid in that taxes on all tangible personal property are to be levied by valuation uniformly and proportionately except as otherwise specifically exempted. See, Grainger Brothers Co. v. Board of Equalization, 180 Neb. 571, 144 N. W. 2d 161; Homan v. Board of Equalization, 141 Neb. 400, 3 N. W. 2d 650; H/K Company v. Board of Equalization, 175 Neb. 268, 121 N. W. 2d 382; State ex rel. Meyer v. McNeil, 185 Neb. 586, 177 N. W. 2d 596. The establishment of two methods of valuation of property in the same class for taxation purposes results in a want of uniformity within the constitutional prohibition of Article VIII, section 1, of the Constitution of the State of Nebraska. First Nat. Bank & Trust Co. v. County of Lancaster, 177 Neb. 390, 128 N. W. 2d 820; State ex rel. Meyer v. McNeil, *supra*.

The State argues that the purpose of amending Article VIII, section 1, of the Constitution of the State of Nebraska, was to grant the Legislature wide discretion in both defining motor vehicles and in determining what items of personal property may be included as a motor vehicle and thus taxed differently from other personal property.

Both a reading of the legislative history preceding the amendment in 1952 to Article VIII, section 1, of the Constitution, and a plain reading of the words "motor vehicles" makes it manifestly clear that the people of the State of Nebraska, in amending Article VIII, section 1, did not intend to include mobile homes as a motor vehicle. The legislative history discloses that the purpose of the amendment was to permit the state to design a taxing method for motor vehicles which would prevent losses from nomad or transient owners. It was also stated that under the law as it existed prior to the amendment, it was possible for the owners of motor vehicles to own the vehicles for up to 21 months without the payment

of any tax. Nothing was said about mobile homes.

The evidence in this case discloses that the mobile homes in question resemble in all respects a residence. A double-wide inevitably consists of a unit which is basically two pieces that fit together and form a mobile home approximately 24 feet wide.

While it is true that single-wides and double-wides may contain axles and tires that allow them to be towed, usually by special vehicles, to the place where they are located, once they are placed upon their permanent pads the axles and wheels are usually removed and the mobile home becomes immobile. It is likewise true, with regard to the double-wides, that when being towed they are separated and open to the elements on one side except for perhaps a plastic cover. Each half is separately transported and could not in any manner be used while being conveyed as a motor vehicle or trailer. Likewise, single-wides, when being transferred, are not at all self-contained units, and could not be operated or used as a trailer.

At their location they are removed from the axles and wheels and placed on concrete pads and piers each about 6 to 7 feet apart. In addition, with units constructed during the last 3 years, hurricane bands built into the walls of the units are anchored with bolts augered 3 to 4 feet into the ground.

Until they are put in place and made immobile, there are no utilities which operate, and once put in place and made immobile, they are often skirted around their bases. According to the plaintiffs' witness, between 75 and 80 percent of mobile homes once located are never moved. When they are moved, it takes approximately 3 days to dismantle the mobile home and set it up for moving, and several more days to replace it in its new location. At present prices moving expenses will range from $500 for a single-wide, to $1,000 for a double-wide.

The evidence in this record further discloses that

the interiors of these mobile homes resemble a residence in every respect, and one looking at the exhibits disclosing the interior of these mobile homes, if not advised that in fact they were mobile homes, would not be able to distinguish them from any other residence. They are not in any stretch of the imagination a motor vehicle.

Courts which have been called upon to examine the meaning of the word "motor vehicle" have likewise, almost without exception, concluded that a motor vehicle is a self-propelled vehicle designed for, intended to be used for, or actually used to transport persons and property over roads and highways. See, International Ins. Co. in N. Y. v. Hensley Steel Co., Inc., 497 S. W. 2d 64 (Tex. Civ. App., 1973); Travelers Insurance Company v. Elkins, 468 S. W. 2d 487 (Tex. Civ. App., 1971).

Black's Law Dictionary, (4th Ed., 1968), defines a motor vehicle as "[A]ny self-propelled 'vehicle,' defined as including every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human or muscular power or used exclusively upon stationary rails or tracks." Almost without exception the plain meaning of the word "motor vehicle" implies that the device in some manner be a self-propelled wheeled conveyance. See, Webster's Third International Dictionary, p. 1476 (1968); American Heritage Dictionary, p. 857 (1969).

Furthermore, it appears that notwithstanding the Legislature's attempt to prescribe a particular method of taxing mobile homes as motor vehicles, the Legislature has nonetheless recognized that mobile homes are in fact residences and not motor vehicles. Article VIII, section 2, of the Constitution, provides: "The Legislature may by general law provide that a portion of the value of any residence actually occupied as a homestead by any classification of owners as determined by the Legislature

shall be exempt from taxation." Pursuant to that authority, the Legislature has adopted section 77-202.12, R. S. Supp., 1978, defining homestead to mean: "* * * either (a) a residence *or mobile home,* and the land surrounding it, not exceeding one acre, in this state actually occupied as such by a natural person * * *, or (b) a residence *or mobile home* located on land leased by the owner of the residence or mobile home, which is located within this state, and is actually occupied by the person * * *." (Emphasis supplied.) The owner of a mobile home is thus granted a homestead exemption in the same manner as the owner of a home. How can it be suggested for a moment that the owner of a motor vehicle is entitled to a homestead exemption?

No one can seriously contend that these mobile homes are anything other than a residence, and if placed on one's own land as opposed to leased land, would be considered as real estate. § 60-1601.01, R. R. S. 1943. The conclusion that the Legislature exceeded its authority in defining a mobile home as a motor vehicle is inescapable. Having reached that conclusion, we must further determine that mobile homes must be assessed and taxed uniformly and proportionately with all other personal property and may not therefore be taxed in the manner prescribed by sections 77-1238 to 77-1242.02, R. R. S. 1943, as amended. For that reason we must find and determine that the provisions of sections 77-1238 through 77-1242.02, insofar as they include mobile homes within the definition of motor vehicles, are void and unenforceable.

Two other somewhat related matters are raised in this appeal which deserve comment.

The State on the one hand argues that a mobile home is a motor vehicle because it is initially titled through a manufacturer's certificate of title and ultimately registered to the owner through a certificate of title, much like a motor vehicle. The manner in

which evidence of ownership is established cannot alter the Constitution of this state.

The Legislature may in the exercise of its police power prescribe reasonable regulations for the ownership of personal property, including the manner in which it is titled. Taylor v. Karrer, 196 Neb. 581, 244 N. W. 2d 201; State ex rel. Rogers v. Swanson, 192 Neb. 125, 219 N. W. 2d 726. The manner in which proof of ownership is established, however, does not permit the Legislature to make any item of personal property what it is not, and thereby avoid the requirements of Article VIII, section 1, of the Constitution of the State of Nebraska, with regard to uniformity. The simple permitted act of requiring a boat, for instance, to have a certificate of title would not make the boat a motor vehicle. Likewise, permitting ownership of a mobile home to be established by a certificate of title does not make it a motor vehicle.

The plaintiffs on the other hand argue that imposing a requirement that an owner of a mobile home pay a fee of $2.50 to obtain a permit for a mobile home also violates Article VIII, section 1, and Article III, section 18, of the Constitution of the State of Nebraska. We think not.

Under the provisions of Article VIII, section 2, of the Constitution of the State of Nebraska, the Legislature may establish reasonable classes of personal property. Putting all mobile homes in a separate class of personal property appears to us to be reasonable. Taylor v. Karrer, *supra*; State ex rel. Rogers v. Swanson, *supra*. We believe that the trial court correctly found that the requirement of obtaining a permit for a mobile home was an exercise of the police power and not the taxing power of the state. Often items of personal property are required to be registered. One such class which quickly comes to mind is boats. The purpose of requiring registration, however, is not for the purpose of rais-

ing revenue, but rather for the purpose of fulfilling the lawful authority of the state with regard to the public health, safety, and welfare. We find nothing wrong with the state requiring the registration of mobile homes and the assessing of a reasonable fee to defray the costs of registration and inspection, if any. State v. Phillips, 133 Neb. 209, 274 N. W. 459; Littlefield v. State, 42 Neb. 223, 60 N. W. 724.

The judgment of the trial court, therefore, is reversed and the cause remanded with directions to enter a judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.