685 P.2d 821

**CITY OF LEWISTON, a municipal corporation of the State of Idaho, Plaintiff-Appellant,**

**v.**

**Walter KNIERIEM and Beverly Knieriem, husband and wife, Defendants-Respondents.**

**No. 13792.**

Supreme Court of Idaho.

June 28, 1984.

Edwin L. Litteneker, Lewiston, for plaintiff-appellant.

Charles A. Brown, of Aherin, Rice & Brown, Lewiston, for defendants-respondents.

BAKES, Justice.

Appeal is taken from a district court judgment denying a mandatory injunction which would have required the removal of a mobile home from a parcel of real property. On the basis of the record before us, we reverse.

The parties filed a stipulation of facts prior to trial which establishes that on or about April 1, 1977, defendant respondents, Walter and Beverly Knieriem, placed a mobile home to be used as their permanent residence on a parcel of property owned by them and located within the City of Lewiston. The parcel is located in an area zoned F–1, a farm zone in which single family dwellings are a permitted use, but mobile homes that are not a pre-existing or conditional use are prohibited. The parcel had an existing residence on the premises, which the Knieriems had lived in prior to moving the mobile home onto the premises. After the mobile home was moved on, the Knieriems moved into it and rented the existing residence. The City of Lewiston notified the respondents that the placement of their mobile home was contrary to the provisions of Lewiston's zoning and mobile home ordinances and requested them to remove their mobile home. When respondents failed and refused to remove the mobile home, plaintiff appellant City of Lewiston sought an injunction to enforce the ordinances which restrict the location of the mobile home from the area in question.

The district court, sitting without a jury, heard testimony and arguments and, after the conclusion of trial, having previously entered its findings of fact and conclusions of law, the court entered its judgment in which it concluded that "the banning of mobile homes from all residential districts without regard to their effect on property values is not a constitutionally acceptable means to preserve property values because it is totally arbitrary and unreasonably sweeping." The court also concluded that "[t]he zoning ordinances at bar unconstitutionally ban Defendant's mobile home from the neighborhood and lot in question both by taking property rights without due process and by denying equal protection." The court denied plaintiff's request for a permanent injunction to perpetually enjoin defendants from violating the zoning ordinance and mobile home ordinance of the City of Lewiston, which injunction would have required removal of the mobile home from the property in question.

On appeal, we are asked to review the trial court's determination of the unconstitutionality of the ordinance in question. According to the Lewiston City Code, mobile home developments are an allowed use in both R–1 and R–2 residential areas. The ordinance allows mobile homes to be placed in mobile home parks, mobile home subdivisions, or mobile home planned unit developments.[1] The zoning map of the City of

1. Section 23–01 of Chapter 23 of the Municipal Code of the City of Lewiston provides:

"The city council of the City of Lewiston, Idaho, hereby finds and declares that the indiscriminate placement of mobile homes and trailers on individual building lots in the residential zones of the city threatens irreparable damage to residential property values within

Lewiston indicates that approximately 50% of the zoned area of the city is zoned either R–1 or R–2.

It is unclear whether the district court decided this question on the basis that the ordinance is an unconstitutional exercise of the municipality's police power, or on the basis that the ordinance in question denies rights of equal protection and due process. Although the arguments in the briefs on appeal do not plainly distinguish between the two theories, the appellant raises the issues separately, as distinct reasons for overturning the decision of the district court. Therefore, we will examine the reasonableness of the mobile home ordinance as an exercise of police power and also analyze the ordinance under standards of equal protection and due process.

I

Local legislative bodies are authorized to enact zoning ordinances restricting use of property within the corporate limits. *Dawson Enterprises, Inc. v. Blaine County,* 98 Idaho 506, 511, 567 P.2d 1257, 1262 (1977); *White v. City of Twin Falls,* 81 Idaho 176, 183, 338 P.2d 778, 782 (1959). The zoning power is not unlimited; the power to zone derives from the police power of the state, and zoning ordinances must therefore bear a reasonable relation to goals properly pursued by the state through its police power. Idaho Const. Art. 12, § 2; *Dawson Enterprises, Inc. v. Blaine County, supra: see Cole-Collister Fire Protection Dist. v. City of Boise,* 93 Idaho 558, 562, 468 P.2d 290, 294 (1970). A strong presumption exists in favor of the validity of local zoning ordinances. *Dawson Enterprises, Inc. v. Blaine County, supra,* 98 Idaho at 511, 567 P.2d at 1262. The burden of proving that the ordinance is invalid rests upon the party challenging its validity and the presumption in favor of validity can be overcome only by a clear showing that the ordinance as applied is confiscatory, arbitrary, unreasonable and capricious. *Wyckoff v. Board of County Comm'rs,* 101 Idaho 12, 14, 607 P.2d 1066, 1068 (1980). Where there is a basis for a reasonable difference of opinion, or if the validity of legislative classification for zoning purposes is debatable, a court may not substitute its judgment for that of the local zoning authority. *Dawson Enterprises, Inc. v. Blaine County, supra,* 98 Idaho at 512, 567 P.2d at 1263.

It is generally recognized that mobile homes

> "are residential uses which possess special characteristics which warrant their separate regulation. Thus, they may be confined to mobile home parks, or may be excluded from residential districts. ... Absent exceptional circumstances, the exclusion of this use from a residential district is not regarded as unreasonable." *State ex rel. Wilkerson v. Murray,* 471 S.W.2d 460, 462 (Mo.1971), *cert. den.* 404 U.S. 851 [92 S.Ct. 87, 30 L.Ed.2d 90] (1971), *citing* Anderson, American Law of Zoning, Vol. 2, § 11.52, p. 372.

*See Duckworth v. City of Bonney Lake,* 91 Wash.2d 19, 586 P.2d 860 (1978); *see also Wyckoff v. Board of County Comm'rs of Ada County, supra.*

The purposes sought to be advanced by the City of Lewiston's limitation on the placement of mobile homes are, as stated in the restricting ordinance, to "protect residential property values, to preserve the intent of the city's comprehensive plan,

the city. The city council further finds and declares that, in order to protect residential property values, to preserve the intent of the city's comprehensive plan, and to promote the general safety and welfare of the City of Lewiston and the residents thereof, mobile homes shall be located only within mobile home parks, mobile home subdivisions, and mobile home planned unit developments, except in emergency situations, as hereinafter provided."

Although this particular provision was enacted as part of Chapter 23, Mobile Homes and Tourist Facilities, it is cross-referenced to in Chapter 37, Zoning, and, like zoning, is a restriction on the use of land resulting from a municipality's exercise of its police power. Therefore, this ordinance will be construed as an exercise of the city's zoning authority.

and to promote the general safety and welfare of the City of Lewiston" and its residents. These are legitimate bases for regulation and the trial court properly found that these purposes are constitutional.[2] In determining whether the ordinance is a valid exercise of police power, the question then becomes whether the ordinance bears a reasonable relationship to the advancement of those established purposes. The indiscriminate placement of mobile homes within a municipality may undermine conservation of property values and stifle the development of a potential residential neighborhood. *See Napierkowski v. Township of Gloucester,* 29 N.J. 481, 150 A.2d 481 (1959). The intent of comprehensive zoning is to provide for orderly growth and development, conserve and stabilize property values, promote the best use of land, and to promote the general health, safety and welfare. *See* I.C. § 67–6502; § 37–2, Zoning Ordinances of the City of Lewiston. Preserving and promoting general health and welfare includes providing necessary services such as water and sewage, schools, and police and fire protection. Cities have found it easier to provide and regulate necessary services by limiting mobile homes to mobile home parks or other designated areas. *State v. Larson,* 292 Minn. 350, 195 N.W.2d 180 (1972).

We conclude that under the aforementioned rules of construction the ordinance in question bears a reasonable relation to the protection of property values, the general health and welfare and the intent of comprehensive zoning, that it was not shown to be clearly arbitrary or unreasonable and hence represents a valid exercise of the City of Lewiston's police power. Our conclusion is supported by the great majority of jurisdictions. *See, e.g., Warren v. Municipal Officers of Gorham,* 431 A.2d 624 (Me.1981); *Mobile Home City of Chattanooga v. Hamilton County,* 552 S.W.2d 86 (Tenn.App.1976), *cert. den.* 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977); *City of Brookside Village v. Comeau,* 633 S.W.2d 790 (Tex.1982) *cert. den.* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982); *Town of Stonewood v. Bell,* 270 S.E.2d 787 (W.Va.1980); *Duckworth v. City of Bonney Lake,* 91 Wash.2d 19, 586 P.2d 860 (1978): *accord, County of Ada v. Walter,* 96 Idaho 630, 533 P.2d 1199 (1975). *Contra Robinson Township v. Knoll,* 410 Mich. 293, 302 N.W.2d 146 (1981).[3] *See generally,* Annot., 42 A.L.R.3d 598 (1972); Annot., 96 A.L.R.2d 232, § 5 (1964). It seems that the trial judge placed undue emphasis, as do respondents here, upon testimony that only one lot in a mobile home subdivision was available *for sale* at the time of trial. This fact does not support the trial judge's conclusion that:

> "[T]he zoning scheme in Lewiston has created a situation in which the placement of mobile homes is presently banned for all practical purposes. It is unconstitutional for Lewiston in the name of comprehensive planning to create ordinances, the practical effect of which, is to completely bar a type of home which is safe, healthful, and is presently being purchased by a substantial percentage (about one-third) of all home buyers in the country."

The record clearly shows that mobile home parks, subdivisions, and planned unit developments are allowed, under Lewiston's zoning scheme, in approximately 50% of the city. While there may have been only one lot available *for sale,* the record does reflect that there were other mobile home parks which rented space. Merely because these particular parties could not locate a lot *to purchase* that met their criteria does

2. As stated by the trial court:
"The purpose of the ordinance concerning mobile homes in Lewiston has been stated in the ordinance and shown by testimony to be the preservation of property values and the preservation of the health, safety and welfare of the community. These purposes are constitutional."

3. We are not unmindful of the general improvements in the quality and appearance of mobile homes. These changes may indeed persuade municipalities to amend ordinances similar to the ordinance in question. Such changes, however, are properly left for the legislative, not the judicial process.

not invalidate the ordinance. A city need not provide the lots or finance construction of subdivisions to assure that any particular person can buy one; the city merely has to provide the mechanism, which Lewiston has done by zoning approximately 50% of the city R–1 and R–2 where mobile home subdivisions and parks are allowable uses. Where the purpose of the ordinance is constitutional, and a total ban has not been imposed, the ordinance will be upheld as a valid exercise of the city's police power.

II

The district court also stated that the ordinance regulating the location of mobile homes within the City of Lewiston was unconstitutional in "taking property rights without due process and by denying equal protection." [4] We turn first to the equal protection arguments.

A threshold inquiry in determining whether an ordinance works a denial of equal protection is what level of scrutiny is to be applied. There is no claim that this action involves a suspect class, requiring strict scrutiny. *See Idaho Quarterhorse Breeders Ass'n, Inc. v. Ada County Fair Board,* 101 Idaho 339, 612 P.2d 1186 (1980). Nor does the ordinance obviously discriminate on its face or patently lack relationship to its declared purpose, triggering the means-focus analysis expressly adopted by this Court in *Jones v. State Board of Medicine,* 97 Idaho 859, 867, 555 P.2d 399, 407 (1976), *cert. den.* 431 U.S. 914, 97 S.Ct. 2173, 55 L.Ed.2d 223 (1977). Therefore, we hold that the traditional level of restrained review, *i.e.,* whether the distinctions drawn bear a rational relationship to a legitimate legislative objective, is appropriate. *Twin Falls Clinic & Hospital Bldg. v. Hamill,* 103 Idaho 19, 24, 644 P.2d 341, 346 (1982). Under the "rational basis" test, equal protection is offended only if the classifications "are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982); *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *see Jones v. State Board of Medicine, supra; Evans v. Idaho State Tax Comm'n,* 95 Idaho 54, 501 P.2d 1054 (1972).

The stated purposes of the ordinance restricting the location of mobile homes within the City of Lewiston are to "protect residential property values within the city, to preserve the intent of the city's comprehensive plan, and to promote the general safety and welfare of the City of Lewiston and the residents thereof." These are legitimate legislative purposes and, as set forth in Part I, the restrictions on the placement of mobile homes are rationally related to these ends. When the ordinance is considered in this light, it is apparent that the trial court erred in determining that the restrictions on the placement of mobile homes within the City of Lewiston is a denial of equal protection.

Appellant also argues that the trial court erred in determining that the ordinance constitutes a taking of property in violation of rights of due process. As this Court recently stated in *Heese v. A & T Trucking,* 102 Idaho 598, 601, 635 P.2d 962, 965 (1981), "The standard applicable in due process cases is whether the challenged law bears a rational relationship to a legitimate legislative purpose." *See Jones v. State Board of Medicine, supra.* For the reasons stated above, the ordinance in question survives the due process challenge as well.

We reverse and remand to the trial court with directions to issue a mandatory injunction requiring respondents to remove the mobile home from the property in question. We also reverse the award of attorney fees. Costs to appellants.

DONALDSON, C.J., HUNTLEY, J., and TOWLES, J. Pro Tem., concur.

4. The district court did not differentiate between the rights of equal protection and due process afforded by the United States Constitution and the Idaho Constitution, nor did the parties specifically rely on the federal or state Constitution in their briefs on appeal. Our analysis, however, applies equally to either clause.

McFADDEN, Justice Pro Tem., dissenting:

In my opinion the judgment of the trial court should be affirmed.

The trial court entered detailed findings of fact which appellant City as not challenged. Based on these findings, the trial court concluded that the ordinance involved was unconstitutional, and the judgment reflects those conclusions.

I am convinced that the Knieriems sustained their burden of proof establishing the unconstitutionality of the ordinances in question, having shown that there is a lack of a substantial relation to the protection of property values, the general health and welfare, and the intent of the comprehensive zoning.

A. *Property values*

The evidence introduced at trial, even by the city of Lewiston, was that a mobile home per se does not affect neighborhood values. What impact it will have depends on the mobile home involved. As in "stick built" housing, the placing of a mobile home of lesser value in an expensive neighborhood will have a detrimental effect on property values. The converse is equally true, however. The placement of a higher value mobile home in a lower valued neighborhood will have a beneficial effect on the general property values of that area. The ordinance in question bans *all* mobile homes regardless of value. Additionally, it was uncontroverted at trial that the character of the neighborhood in which the Knieriems reside is characterized by mobile homes and lower priced conventional homes. The Knieriems' mobile home blends into the neighborhood and, other than the testimony of Dr. Doyle,[1] it is clear that this home is not having an adverse effect on the property values in the neighborhood. In spite of all the evidence, including the stipulations of fact, the majority concludes that the ordinance bears a *substantial relation* to the maintenance of property values.

B. *General safety and welfare of the city and the intent of the city's comprehensive plan.*

I fail to see how the prohibition of one type of home fulfills these purposes. The testimony of Mr. Chase, community development director, was that the city zones for density. If this is true, a reasonable ordinance would restrict the number of persons residing in a dwelling, not a type of dwelling. In the interests of providing adequate water, sewage, schools and police and fire protection, how is the type of dwelling relevant? There was no evidence that mobile homes require more water, more sewage disposal, more schools or more police protection. There was some testimony that there is a danger of flashback in a mobile home fire; however, there was no testimony that the placement on single lots increases the danger or that grouping these homes together decreases the danger. Additionally, if this were a serious contention, the city would not have stipulated to the fact that the Knieriems' mobile home compares favorably with conventional homes as far as the physical wellbeing of the inhabitants is concerned. Assuming this to be true, the city cannot discriminate against a type of housing when there is no rational basis for it.

Finally, the majority concludes that the ordinance bears a substantial relation to the intent of comprehensive zoning. Testimony at trial indicated that intent to be to stabilize uses, conserve property values, preserve neighborhood character and promote orderly growth and development. The conservation of property values has been discussed above, and it is clear that this ordinance does not fulfill that purpose. The Knieriems are attempting to maintain a mobile home in a neighborhood characterized by mobile homes and lower priced conventional homes. To ban this mobile home

1. Dr. Doyle is the next door neighbor to the Knieriems at whose insistence this action was brought. Dr. Doyle was at the time of trial in the process of building an expensive home on his property. There was testimony that his home, not the Knieriems' mobile home, was hopelessly out of place in the neighborhood.

will not preserve the character of the neighborhood. The trial court found that the city was attempting to alter the character of this neighborhood. The testimony of Mr. Chase, community development director, is enlightening on this point.

> "Q. Well, as I understand it, and correct me if I'm wrong, on the application on that grandfather clause if someone has a mobile home due to the grandfather clause and say they don't like the color of the mobile home, they—various reasons they want to get rid of that one and get a new mobile home, that's allowable; isn't it, under that grandfather clause?
>
> ....
>
> "THE WITNESS: Mobile home and on individual lot is nonconforming use. It existed before the regulations went into effect. We allow for improvement in nonconforming use to make it less offensive. In that sense if you have an existing mobile home you can replace it with a newer one because you have rights to that mobile home. And replacement in effect would be improvement of the property.
>
> BY MR. BROWN:
>
> "Q. You can replace it with an older—
>
> "A. You can replace an old one with a new one.
>
> "Q. Can you replace a newer one with an older one?
>
> "A. (The witness nodded affirmatively.)
>
> "Q. You probably would be able to?
>
> "A. Yes, you could replace it. There would be no way we would have of regulating the age of the home."

The majority asserts that its conclusion that this ordinance bears a reasonable relation to the purpose is supported by the great majority of jurisdictions citing among other cases, *Duckworth v. City of Bonney Lake,* 91 Wash. 586 P.2d 860 (1978).

While *Duckworth* may appear at first blush to support the majority's conclusion that the ordinance bears a reasonable relation to the preservation of property values, health and welfare, and intent of comprehensive zoning, a full reading of the case supports the conclusion that mobile homes may not be restricted by an ordinance such as the one involved here. The Washington Supreme Court stated at 866:

> "Generally speaking, however, most municipal efforts to *totally exclude* mobile homes from a community have been found unconstitutional as an unreasonable exercise of police power. American Law of Zoning, § 14.01 at 558–62; Annot., Use of trailer or similar structure for residence purposes as within limitation of restrictive covenant, zoning provision or building regulation, 96 A.L.R. 232 § 3[a], p. 2317 (1964). However, and in recognition of differing needs, it is well settled that while such homes may not be *totally excluded,* they may be classified separately from other residential uses for purposes of regulation. American Law of Zoning § 14.01, p. 550 and § 14.05, p. 562, 96 A.L.R.2d, *supra* at 232, § 3[b] at 238. As so regulated, mobile homes may be restricted to certain zones and excluded from others. The Law of Mobile Homes, *supra* at p. 189; American Law of Zoning, *supra,* § 14.05, pp. 562–566." (Emphasis in original.)

Washington's zoning scheme in which mobile homes are not allowed in *certain zones* on regular lots differs from Lewiston's where they are prohibited in *all zones* unless located in a mobile home park, subdivision, or planned unit development. Therefore, even under the rule announced in *Duckworth,* the Lewiston ordinance does not withstand constitutional scrutiny.

In my opinion, the Michigan Supreme Court decision in Robinson *Township v. Knoll,* 410 Mich. 293, 302 N.W.2d 146 (1981), is better reasoned and is more reflective of the proper conclusion than those cases cited by the majority, supposedly consisting of the "great majority of jurisdictions." This is especially true in light of the extensive findings by the trial court and the record consisting of testimony and stipulations which fully support those find-

ings.[2] The facts in *Robinson Township* are on point with the case at bar. *Robinson Township* had commenced an action against the Knolls seeking removal of a mobile home from their lot. The complaint alleged that the mobile home was contrary to the township's ordinance which provided that mobile homes may be located only in mobile home parks. The Michigan Supreme Court overruled one of its earlier decisions and held that the *per se* exclusion of mobile homes from all areas not designated as mobile home parks had no reasonable basis under the police power and was therefore unconstitutional. The court asked the question: "Do mobile homes differ from other single-family dwellings in any constitutionally cognizable manner which would justify their per se classification as a different use? If not, then the ordinance limiting mobile homes to mobile home parks has 'no reasonable basis for its very existence.'" Referring to the previous decision of the court which had held that a municipality can limit trailers to trailer parks, the court noted that case was decided over thirty years ago and "more than the label has changed with time. The mobile home of today can compare favorably with site-built housing in size, safety and attractiveness. To be sure, mobile homes inferior in many respects to site-built homes continue to be manufactured. But the assumption that all mobile homes are different from all site-built homes with respect to criteria cognizable under the police power can no longer be accepted."

The court then discussed that if mobile homes are to be excluded from all residential zones other than mobile home parks, it cannot be because they are movable or portable because site-built homes are movable or portable, although they are rarely moved.[3] Further, nor do the criteria "constructed to be towed on its own chassis" and "designed without a permanent foundation" identify characteristics which justify the exclusion and segregation of mobile homes. In this regard the court stated at p. 151:

> "One can agree that a community has a legitimate interest in safeguarding residents against, for example, windstorm damage, justifying a requirement that a mobile home be firmly attached to a solid foundation on the site. And a municipali-

2. *Ada County v. Walter,* 96 Idaho 630, 533 P.2d 1199 (1975); *Warren v. Municipal Officer of Gorham,* 431 A.2d 624 (Me.1980); *Mobile Home City v. Hamilton County,* 552 S.W.2d 86 (Tenn. App.1976), *cert. den.* 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977); *City of Brookside Village v. Comeau,* 633 S.W.2d 790 (Tex.1982), *cert. den.,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982); *Town of Stonewood v. Bell,* 270 S.E.2d 787 (W.Va.1980); *Duckworth v. City of Bonney Lake,* 91 Wash.2d 19, 586 P.2d 860 (1978).

3. Mobile homes are also rarely moved.
" '[O]nce put in place and made immobile, they are often skirted around their bases. According to plaintiffs' witness, between 75 and 80 percent of mobile homes once located are never moved. When they are moved, it takes approximately three days to dismantle the mobile home and set it up for moving, and several more days to replace it in its new location. At present prices moving expenses will range from $500 for a single-wide to $1000 for a double-wide.' *Gates v. Howell,* 204 Neb. 256, 262, 282 N.W.2d 22 (1979).
" 'It need hardly be pointed out that these double width homes are intended to remain on site permanently, and that their removal by cranes or other heavy machinery would undoubtedly entail considerable difficulty and oftentimes considerable damage to the landscape. Insofar as the single width homes are concerned their removal would also entail some difficulty since in their current models they may be as much as seventy feet long and fourteen feet wide. Here, as with the double width homes, the intent that they remain on site permanently is entirely evident.' *Koester v. Hunterdon County Board of Taxation,* 79 N.J. 381, 386, 399 A.2d 656 (1979).
"Transient use could be expected, if at all, only of mobile homes located in, rather than away from, mobile home parks. But even this expectation is not supportable in fact, for '[w]hile mobile homes were originally for transient purposes, today about 60% of all mobile homeowners never move their home. The MHMA [Mobile Home Manufacturers' Association] reports that the average stay in one location by mobile home owners is 58 months, which is approximately the same residency duration as in conventional housing. About 70% of the mobile homes used since World War II have been used as permanent dwellings.' Neithercut, *The Mobile Home: Problems With Its Recognition as a Valid Housing Source,* Newsletter, Real Property Section, State Bar of Michigan (No. 10, Dec. 1975), p. 25" 302 N.W.2d at 152–53, n. 16.

ty may reasonably conclude that a dwelling the wheels and chassis of which are exposed is unsightly or is likely to lead to transience and should not be tolerated alongside site-built homes. These and similar considerations would justify requirements that certain on-site modification be made as a condition to placement of a mobile home in an area not designated mobile home park.... Just as 'the reasonableness of a zoning restriction must be tested according to existing facts and conditions and not some condition which might exist in the future,' so must an ordinance restricting the placement of mobile homes be directed to the dwelling as it will exist on the land, and not, as here, to its characteristics when delivered to the site."

The court discussed segregation based on aesthetics, health and safety, and concluded that municipalities are free to deal with these concerns in a reasonable code by imposing standards to assure that mobile homes compare favorably with site-built housing including requirements that they be placed on permanent foundations, be hooked up to utilities, size of living space, etc. The City of Lewiston recognizes that mobile homes can compare favorably with site-built housing in its stipulation of facts, stated above, in which it stipulates that "[t]he mobile nature of one of these mobile homes is decreased if the plaintiff were to make certain regulations as to: (1) the use of skirting the trailers; (2) use of tires on the trailers; (3) removal of tongue of the trailer; (4) use of foundation beneath the trailer. *If such regulations are implemented, then distinctions between defendants' mobile home and a conventional home would be obviated.*" (Emphasis added.)

If there is no distinction between a mobile home and a conventional home, there is no reasonable basis for distinguishing between the two.

The Lewiston City Code states its purpose is to protect property values. This is a proper purpose within the police powers. However, the per se exclusion of mobile homes to achieve this purpose is not. The city is free to impose standards, as discussed in the *Robinson* case, to assure that they compare favorably with site-built housing. The City Code does provide for modular housing and does not restrict it. The only difference in the definitions between mobile homes and modular homes is that mobile homes are designed to be carried on their own chassis and modular homes are transported on a trailer. Pictures of mobile homes generally available in the Lewiston area were admitted into evidence. Mobile homes being manufactured today can compare favorably with conventional "stick built" housing in size, appearance and safety. The pictures of the mobile homes indicate that they are not readily discernible as manufactured housing once placed on the site and secured to a foundation. Still, somewhere there must be a "substantial relationship" between the prohibition of mobile homes and the health, welfare and safety of the community to reverse the trial court. I, however, fail to see it, and the majority of this Court has failed to point it out.