No. 90-238

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

MACK T. ANDERSON INSURANCE
AGENCY, INC.

       Plaintiff and Appellant,

   -vs-

CITY OF BELGRADE, MONTANA, A
Municipal Corporation organized under
the laws of the State of Montana
and Belgrade Board of Adjustment,

       Defendants and Respondents.



FILED

DEC 20 1990

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          McKinley Anderson, Attorney at Law, Bozeman, Montana
          Joseph W. Sabol, Attorney at Law, Bozeman, Montana

      For Respondent:

          William Schreiber, City Attorney, Belgrade, Montana

      For Amicus Curiae:

          Leo Ward; Browning, Kaleczyc, Berry & Hoven, P.C.,
          Helena, Montana (Montana League of Cities and Towns)

          Roger Tippy; Tippy & McCue, Helena, Montana (Montana
          Manufactured Housing and Recreational Vehicle
          Association)

                       Submitted: October 25, 1990

                        Decided: December 20, 1990

Filed:

                       /Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Plaintiff, Mack T. Anderson Insurance Agency Inc., appeals from an order of the Gallatin County District Court granting summary judgment in favor of defendants City of Belgrade and the Belgrade Board of Adjustment and dismissing plaintiff's complaint which challenged the constitutionality of a Belgrade zoning ordinance. The District Court affirmed the Belgrade Board of Adjustment's decision which upheld the denial of plaintiff's application for a building permit. We affirm.

The issues as framed by this Court are:

1. Is the zoning ordinance prohibiting the individual placement of manufactured homes in an R-4 zoning district a constitutional exercise of the City of Belgrade's police power?

2. Did the District Court abuse its discretion when it granted summary judgment in favor of the defendants without first conducting an evidentiary hearing?

On April 25, 1989, plaintiff applied for a building permit to place a manufactured (mobile) home on Lot 11 of Block 21 of the Armstrong Addition to the City of Belgrade. The manufactured home was to be placed on a permanent concrete foundation. The lot in question is located in an area having an R-4 zoning designation which is defined under Belgrade City Zoning Ordinance No. 466 as a residential-apartment district. The ordinance was enacted in accordance with a comprehensive zoning plan for the City of Belgrade which was adopted in 1972 and revised in 1979. Modular

or site-built homes are treated as conventional housing under the ordinance and are a permitted use within the R-4 district. Individual placement of manufactured homes is not a permitted use within the R-4 district, however, they are permitted in R-2-M and R-S-M districts. Additionally, manufactured homes are permitted in mobile home parks as conditional uses in R-3 and R-4 districts.

Under the City zoning ordinance a manufactured home is defined as:

> A factory built or manufactured transportable residential structure more than thirty-two (32) body feet in length and eight (8) feet or more in width, and built on one or more permanent chassis for towing to the point of use, and designed to be used without a permanent foundation as a dwelling unit when connected to sanitary facilities, and which bears an insignia issued by a state or federal regulatory agency indicating that [the] manufactured home complies with all applicable construction standards of the United States Department of Housing and Urban Development definition of manufactured home. The phrase "without permanent foundation" indicates that the support system is constructed with the intent that the manufactured home placed thereon can be moved from time to time at the convenience of the owner. A commercial coach, recreational vehicle, and motor home is not a manufactured home.

A modular home is defined as:

> A factory-fabricated structure designed primarily for human occupancy to be used by itself or to be incorporated with similar units at a building site into a structure on a permanent foundation and which complies with the Montana Building, Plumbing, Electrical, and Mechanical Construction Codes and the rules and regulations for modular housing of the Building Code Division of the Montana Department of Administration. The term is intended to apply to major assemblies and does not include prefabricated panels, trusses, plumbing trees, and prefabricated sub-elements which are to be incorporated into a structure at the site.

> The meter base for incoming wiring is attached to the exterior wall of the modular home; whereas, for a

manufactured home, the meter base must be attached to a pole or a support which is isolated from the structure. The units shall be listed and assessed by the County Assessor as real or personal property.

Plaintiff's application was denied on May 4, 1989, by the City planning director on the basis that plaintiff's placement of its manufactured home in the R-4 district would violate the zoning ordinance.

Plaintiff, pursuant to § 76-2-326, MCA, appealed to the Belgrade Board of Adjustment. Plaintiff argued before the board that the ordinance unduly discriminates against manufactured housing in that no substantial difference exists between manufactured housing and modular housing. The board, in its order dated June 26, 1989, found that: (1) there is a difference between a manufactured home and a modular home as those types of housing are defined under the ordinance; (2) a manufactured home is not a permitted use in an R-4 district; (3) an adequate supply of vacant parcels exist in R-S-M and R-2-M districts each in which the individual placement of manufactured homes is a permitted use; and (4) a petition signed by fourteen citizens protested the placement of the manufactured home in the R-4 district. Based on these findings the board concluded that the City planning director properly executed her duties and that the administrative decision to deny the building permit was correct.

On August 2, 1989, plaintiff filed a complaint in the District Court alleging that the action taken by the board in denying the building permit was unreasonable and unconstitutional. On September 21, 1989, an order for writ of certiorari to issue was

4

entered by the District Court pursuant to § 76-2-327, MCA.

The District Court heard oral argument, reviewed the entire record before it, and made an on-site inspection of the geographical area in question. On March 12, 1990, the court granted defendants' motion for summary judgment dismissing plaintiff's complaint and affirming the decision of the board of adjustment. The District Court concluded that the zoning ordinance in question was a legitimate use of the City of Belgrade's police power. The court also concluded that "[a] decision for Plaintiff in this case would have been . . . an unwise move in the direction of judicial zoning, a step the [c]ourt is not prepared to take under the circumstances presented."

From this judgment plaintiff now appeals.

I.

Is the zoning ordinance prohibiting the individual placement of manufactured homes in an R-4 zoning district a constitutional exercise of the City of Belgrade's police power?

Local municipal governments in Montana are empowered to enact zoning ordinances restricting the use of property in their jurisdictional area. Section 76-2-301, MCA, in pertinent part states that:

> For the purpose of promoting health, safety, morals, or the general welfare of the community, [the local legislative body] . . . is hereby empowered to regulate and restrict . . . the location and use of buildings, structures, and land for trade, industry, residence or other purposes.

A zoning ordinance enacted pursuant to this statutory authority

will be found to be a constitutional exercise of police power if it has a substantial bearing upon the public health, safety, morals or general welfare of the community. Freeman v. Board of Adjustment (1934), 97 Mont. 342, 34 P.2d 534; see also, Euclid v. Ambler Realty Co. (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.

It is plaintiff's contention that no reasonable basis exists for allowing the placement of modular homes built to Uniform Building Code (UBC) standards within the R-4 district and not allowing the individual placement of manufactured homes built to Housing and Urban Development (HUD) standards since HUD standards are as safe as UBC standards. Plaintiff also argues that the ordinance is unconstitutionally arbitrary because a manufactured home cannot be placed in the R-4 district merely because the home must reach its destination "towed on its own chassis." Plaintiff further argues that there is no rational relationship between the reasons for denying the requested permit and the purposes for which the zoning ordinance was enacted and that the ordinance is restrictive for persons of low and moderate incomes.

In examining the validity of the ordinance we note that the purposes of local government zoning regulation in this state is set forth in § 76-2-304, MCA:

> (1) Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements.

6

(2) Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality.

The purpose of zoning is not to provide for the highest or best use of _each_ particular lot or parcel of land within the zones or community, rather it is to benefit the _community generally_ by the sensible planning of land uses taking into consideration the peculiar suitabilities and most appropriate use of land _throughout the community_. Cutone v. Anaconda-Deer Lodge (1980), 187 Mont. 515, 520, 610 P.2d 691, 694.

The City of Belgrade agrees with plaintiff that HUD standards are as safe as UBC standards. However, it asserts that its ordinance prohibiting the individual placement of mobile homes within the R-4 district is based on broader grounds than safety including, but not limited to, a concern for long-term planning, the unique qualities of manufactured homes, and the property values of surrounding residents. It further asserts that it is necessary to consider these factors to be able to reasonably enforce its zoning regulations to promote the public health, safety, morals or general welfare of the community. We agree with the District Court, as it properly stated in this case, that local government police power not only allows but requires consideration of these matters as fundamental factors in zoning decisions. Accordingly, we hold that these factors are legitimate bases for regulation.

Having determined that the bases for the City of Belgrade's zoning ordinance are legitimate, the question then becomes whether

7

the ordinance's prohibition of the individual placement of manufactured homes in the R-4 district bears a reasonable relationship to the advancement of the public health, safety, morals or general welfare of the community. In Freeman v. Board of Adjustment (1934), 97 Mont. 342, 351-52, 34 P.2d 534, 537, this Court stated that:

> The trend of modern decisions, however, is to sustain the validity of such ordinances and the statutes authorizing them . . . Such ordinances have been very generally sustained upon the theory that they constitute a valid exercise of the police power; that is to say, they have a substantial bearing upon the public health, safety, morals and general welfare of a community. (Citations omitted.)

We recognize that manufactured housing has become a major factor in the housing of families and that the rapid increase in the number of manufactured homes presents a complex zoning and planning problem. Just like any other use, manufactured homes must be provided for. However, as stated earlier, any provision must be made by zoning regulations designed to benefit the community generally. Cutone, 610 P.2d at 694; see also Duckworth v. City of Bonney Lake (Wash. 1978), 586 P.2d 860; Anderson, 2 American Law of Zoning, § 14.01 p. 665 (3d ed. 1986).

Most municipal efforts to totally exclude manufactured homes from a community have been found unconstitutional as an unreasonable exercise of police power. Duckworth, 586 P.2d at 866. However, it has been generally held, in recognition of the differing needs of the community, that manufactured or mobile homes

> "are residential uses which possess special characteristics which warrant their separate regulation. Thus, they may be confined to mobile home parks, or may

8

be excluded from residential districts . . . . Absent exceptional circumstances, the exclusion of this use from a residential district is not regarded as unreasonable." (Citations omitted.)

City of Lewiston v. Knieriem (Idaho 1984), 685 P.2d 821, 824. See also, Duckworth, 586 P.2d at 867. "The indiscriminate placement of mobile homes within a municipality may undermine conservation of property values and stifle the development of a potential residential neighborhood." City of Lewiston, 685 P.2d at 825. Promoting the general health and welfare includes providing necessary services such as water and sewerage, schools, and fire protection. Section 76-2-304, MCA. "Cities have found it easier to provide and regulate necessary services by limiting mobile homes to mobile home parks or other designated areas." City of Lewiston, 685 P.2d at 825 (citing State v. Larson (Minn. 1972), 195 N.W.2d 180).

In sum, if the municipality provides an adequate area for manufactured home development, manufactured homes may be excluded from conventional residential districts. In Martz v. Butte-Silver Bow Government (1982), 196 Mont. 348, 353-54, 641 P.2d 426, 430, this Court recognized that a municipality must ensure a fair share of housing is within reach of persons of low and moderate incomes and intimated that where an ordinance is shown to unduly exclude manufactured housing the ordinance is unconstitutional. In the present case the ordinance provides an adequate area for manufactured home development. Manufactured homes are permitted uses in R-S-M and R-2-M zoning districts and manufactured home parks are permitted conditional uses in R-3 and R-4 districts. A

9

survey conducted in late 1986 reflects the present existing situation in the community of Belgrade and shows that approximately 16.88% of the available vacant parcels of land in the area are zoned for manufactured housing.

We hold that the ordinance in question bears a reasonable relationship to the advancement of the public health, safety, morals or general welfare of the community of Belgrade and constitutes a valid exercise of the City's police power.

In so holding, we note that this Court in Cutone v. Anaconda-Deer Lodge (1980), 187 Mont. 515, 610 P.2d 691, quoted with approval from Euclid v. Ambler Realty Co. (1926), 272 U.S. 365, 387-88, 47 S.Ct. 114, 118, 71 L.Ed. 303, 310-11, in which the United State Supreme Court stated:

> "The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation . . . <u>If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.</u>" (Emphasis added.)

<u>Cutone</u>, 610 P.2d at 696. In <u>Cutone</u> this Court also quoted with approval from Village of Belle Terre v. Boraas (1974), 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797, 803-04, in which the United States Supreme Court, in upholding an ordinance which restricted land use to one-family dwellings and prevented the occupation of residences by more than two unrelated individuals within the district, stated:

> "We deal with the economic and social legislation where legislatures have historically drawn lines which

10

we respect against the charge of violation of the Equal Protection Clause if the law be '"reasonable, not arbitrary"' (quoting <u>Royster Guano Co. v. Virginia</u>, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989) and bears 'a rational relationship to a [permissible] state objective.' <u>Reed v. Reed</u>, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225.

"It is said, however, that if two unmarried people can constitute a 'family,' there is no reason why three or four may not. <u>But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function.</u>" (Emphasis added.)

<u>Cutone</u>, 610 P.2d at 696.

As plaintiff points out, a number of state legislatures and local government bodies have viewed the recent technological improvements in manufactured homes as sufficient to eliminate rules distinguishing them from modular homes. However, this Court is not willing to sit as a super-legislature or super-zoning board. Kunz v. Butte-Silver Bow (Mont. 1990), 797 P.2d 224, 226, 47 St.Rep. 1615, 1618; <u>Cutone</u>, 610 P.2d at 697. If an ordinance is found to promote the public health, safety, morals or general welfare of the community, as found here, the wisdom, necessity and policy of the ordinance are matters more appropriately left to the legislative body.

## II.

Did the District Court abuse its discretion when it granted summary judgment in favor of the defendants without first conducting an evidentiary hearing?

In two recent decisions this Court clarified the appropriate standards for judicial review of an administrative ruling. See,

11

Steer, Inc. v. Dep't of Revenue (Mont. December 11, 1990), No. 90-106; Dep't of Revenue v. Kaiser Cement Corp. (Mont. December 11, 1990), No. 90-278. This Court will continue to use the "clearly erroneous" standard for reviewing findings of fact. However, in reviewing conclusions of law, our standard of review will be merely to determine if the administrative agency's interpretation of the law is correct, instead of applying the inappropriate abuse of discretion standard. In Steer, Inc. we stated that this standard of review relating to conclusions of law applies "whether the conclusions are made by an agency, workers' compensation court, or trial court." Steer, Inc. (Mont. December 11, 1990), No. 90-106, slip. op. at 7. We further stated in Steer, Inc. that our standard of review relating to conclusions of law is not to be confused with our review of discretionary trial court decisions. In such instances the standard of an abuse of discretion will still be applied. Steer, Inc. (Mont. December 11, 1990), No. 90-106, slip. op. at 7. This is the situation we are presented with here.

Plaintiff argues that the District Court erred in that, without an evidentiary hearing, the court had no way of determining if the findings or rulings of the Belgrade Board of Adjustment were supported by the evidence. Section 76-2-327(3), MCA, provides the district court with specific authorization to take additional evidence on an appeal from a board of adjustment. However, the court can, in the exercise of its discretion, determine not to take additional evidence if it shall appear to the court that additional evidence is not necessary to properly dispose of the matter.

In the present case the District Court had before it approximately 45 pages of documents and maps which were submitted by the City, along with 22 stipulations of fact and approximately 20 pages of documents submitted by plaintiff. Additionally, the court viewed the entire geographical area, heard oral argument on two separate occasions, plus had the Belgrade Board of Adjustment's written decision and tape recording of the board's meeting in which it upheld the denial of the permit. We hold the District Court did not abuse its discretion.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13